# MARGARET GROSSO *v.* EDWARD GROSSO, JR.
## (AC 18495)

Schaller, Hennessy and Mihalakos, Js.

Argued January 27—officially released August 29, 2000

*Richard G. Kent,* for the appellant (defendant).

*Joseph T. O'Connor,* for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendant, Edward Grosso, Jr., appeals from the judgment of the trial court on his motion for modification of alimony. On appeal, the defendant claims that the trial court improperly (1) suspended his alimony payments, (2) concluded that the separation agreement could be enforced by the plaintiff in an independent action, (3) concluded that the plaintiff may request that alimony arrearages be paid out of nonliquid assets including real estate, (4) ordered the defendant to provide the plaintiff with financial affidavits and employment information every three months and (5) found an alimony arrearage in the amount of $8250. We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiff, Margaret Grosso, and the defendant dissolved their marriage on June 21, 1989, and the court, in its judgment, incorporated by reference a written agreement of the parties. The agreement provided that the defendant would pay to the plaintiff $4000 per month as periodic alimony.[1] The defendant filed a motion to modify the

---

[1] The agreement further provided that the alimony payments "shall be non-modifiable as to duration (term) and amount, and any decree of any court incorporating any or all of the provisions of this agreement shall preclude such modification. The Husband may seek a reduction in the alimony payments only in the event his income from employment is substantially reduced as a result of his involuntary termination of employment . . . In the event, however, that a court shall ever decrease the Husband's obligations as may be permitted herein, the Wife shall thereafter be entitled to move for a modification in order for her to receive the amount to which she was initially entitled, namely at the annual rate of $48,000 by a court's finding that the Husband's financial situation thereafter permits it."

alimony payments, and the trial court, after a hearing on July 30, 1996, reduced the payments to $3500 per month. The defendant filed the present motion for modification of alimony payments on September 24, 1996. The plaintiff, in turn, filed a motion for modification of alimony requesting the extension of the amount and duration of alimony in order to receive the amount to which she was entitled to pursuant to the separation agreement.[2] The court held a hearing on November 20, 1997, and, as a result of that hearing, the court suspended alimony payments and found that the defendant was in arrears in his alimony payments in the amount of $8250 and that his failure to make alimony payments was not wilful in that he had no ability to make the payments. In addition, the court stated that the June 20, 1989 separation agreement survived any order of the court and could be enforced separately by the plaintiff in an independent action. The defendant was ordered to provide the plaintiff with a financial affidavit and employment information every three months, and the plaintiff was given permission to file a request that any alimony arrears be paid out of nonliquid assets, including any real property. It is from those orders that the defendant appeals.

"A trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases, and its orders in such cases will not be reversed unless its findings have no reasonable basis in fact or it has abused its discretion, or unless, in the exercise of such discretion, it applies the wrong standard of law. See *Borkowski* v. *Borkowski*, 228 Conn. 729, 739–40, 638 A.2d 1060 (1994); see also *Fahy* v. *Fahy*, 227 Conn. 505, 517, 630 A.2d 1328 (1993); *McGuinness* v. *McGuinness*, 185 Conn. 7, 13, 440 A.2d 804 (1981). [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been

---

[2] See footnote 1.

reached. . . . *Meehan* v. *Meehan*, 40 Conn. App. 107, 110, 669 A.2d 616, cert. denied, 236 Conn. 915, 673 A.2d 1142 (1996). Trial courts have broad discretion in deciding motions for modification. *Noce* v. *Noce*, 181 Conn. 145, 149, 434 A.2d 345 (1980)." (Internal quotation marks omitted.) *Shearn* v. *Shearn*, 50 Conn. App. 225, 227, 717 A.2d 793 (1998).

I

The defendant claims first that the trial court improperly suspended his alimony payments where the parties' separation agreement specifically provided that alimony could be modified under the circumstances present in this case. Specifically, the defendant argues that the trial court lacked the authority to suspend the payment of alimony under General Statutes § 46b-86 (a).

Periodic alimony is based primarily on a continuing duty to support. *Blake* v. *Blake*, 211 Conn. 485, 498, 560 A.2d 396 (1989). "Modification of alimony, after the date of a dissolution judgment, is governed by General Statutes § 46b-86. . . . When . . . the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony [or child support] may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . ." (Citations omitted; internal quotation marks omitted.) *Shearn* v. *Shearn*, supra, 50 Conn. App. 227–28. Once there has been a showing of a substantial change, the final order for the payment of alimony may be "continued, set aside, altered or modified." General Statutes § 46b-86 (a).

In the present case, in his motion to modify the alimony order, the defendant argued that since the last modification of alimony on July 30, 1996, his income had decreased substantially and, therefore, the amount that he previously had been ordered to pay now significantly exceeded his ability to pay. The trial court found

that there indeed had been a "substantial change in circumstances" since the July 30, 1996 order. The court also found, however, that the defendant is contractually obligated by reason of the June 20, 1989 separation agreement, which was incorporated into the dissolution decree, to pay alimony at the rate of $4000 per month for a period of ten years and eleven months. See *Lasprogato* v. *Lasprogato*, 127 Conn. 510, 514, 18 A.2d 353 (1941) (separation contracts can be "enforced by actions brought upon the contracts themselves and the remedies are no other or different than the remedies provided by law for the breach of any other contract"). The court thereafter ordered that the alimony be suspended retroactive to October 15, 1996.[3]

The defendant argues that the court was without authority to suspend the payment of alimony under § 46b-86 (a) because subsection (a) authorizes the court only "to continue, set aside, alter or modify" alimony. By contrast, § 46b-86 (b) specifically provides that if the party receiving alimony is living with another person, the court "may . . . modify such judgment and *suspend,* reduce or terminate the payment of periodic alimony . . . ." (Emphasis added.) General Statutes § 46b-86 (b). The defendant contends that while a court has the option of suspending alimony in a case where it concludes that one party is cohabitating with another person, that remedy is not available in a modification case not involving cohabitation. The plaintiff, on the other hand, argues that the term "alter" in § 46b-86 (a) is sufficiently broad to include the suspension of alimony payments as crafted by the court. We agree with the plaintiff.

When construing statutes, we must give words and phrases their ordinary meaning. General Statutes § 1-

---

[3] The parties stipulated that any modification would be retroactive to October 15, 1996.

1; see also *State* v. *Harrison*, 228 Conn. 758, 762, 638 A.2d 601 (1994). The term "alter" has been defined as "to make different without changing into something else." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). Considering that there is no limiting language in § 46b-86 (a) and that trial courts have broad discretion in deciding motions for modification; see *Shearn* v. *Shearn*, supra, 50 Conn. App. 227; we conclude that the suspension of alimony payments is in accordance with the term "alter."[4] Moreover, our Supreme Court has held that because a motion for *termination* of alimony is essentially the equivalent of a motion to modify, motions to terminate are governed by § 46-86 (a). Given that "terminate" is listed in subsection (b) and not in subsection (a), we are not persuaded by the defendant's argument that because the word "suspend" is used only in subsection (b), a court cannot suspend alimony under its authority pursuant to subsection (a) to alter the award.

The defendant also argues that because neither party specifically requested the suspension of his alimony payments, the court had no authority to order the suspension. On the contrary, it was the defendant's own motion to modify the alimony payments that invoked the remedies available under § 46-86 (a). The defendant's reliance on *Connolly* v. *Connolly*, 191 Conn. 468, 464 A.2d 837 (1983), for the proposition that no matter should be decided unless the parties have sufficient time to prepare themselves is misplaced. *Connolly* involved a motion to increase alimony payments. After a hearing, the court terminated the alimony payments pursuant to § 46-86 (b) because the recipient was cohab-

---

[4] Moreover, the suspension of alimony is especially useful in the present case where the plaintiff is able to request, pursuant to the separation agreement, the amount to which she was initially entitled, the annual rate of $48,000, when a court decreases the defendant's obligations under the agreement.

itating with another person. Our Supreme Court reversed the court's decision, reasoning that due process required that the cohabitation claim be raised by a written motion, specifically requesting the termination. Id. In the present case, however, the defendant moved to modify the alimony payments pursuant to § 46-86 (a). The court fashioned a remedy for the defendant's changed circumstances in a way contemplated by subsection (a). Accordingly, we find that the court acted properly and did not abuse its discretion in suspending the alimony payments.

## II

The defendant next claims that the court improperly concluded that the defendant is contractually obligated to the plaintiff for unpaid alimony, that the separation agreement survives any order of the court and that the agreement may be separately enforced. The defendant has cited no authority for this claim and has not provided an analysis beyond his conclusory statement that the court's findings were unresponsive to any relief requested. We therefore decline to review this claim. See *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998).

## III

The defendant next argues that the trial court improperly found that the plaintiff may, on or after June 1, 1999, file a request with the court that any alimony arrears be paid out of any nonliquid assets, including any real property. This claim is nonjusticiable because there is no practical relief available to the defendant.

"Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of

being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citations omitted; internal quotation marks omitted.) *Clement* v. *Clement*, 34 Conn. App. 641, 651, 643 A.2d 874 (1994). The defendant fails to satisfy the fourth element. Even if we were to agree with the defendant that the court cannot order that alimony arrears be paid out of nonliquid assets, he cannot obtain any practical relief because the plaintiff has not filed such a request and the court has not ordered that the alimony arrears be paid out of any nonliquid assets.

## IV

The defendant also claims that the trial court improperly required him to provide the plaintiff with a financial affidavit and employment information every three months as evidence of his continuing efforts to obtain employment. Specifically, the defendant argues that there are no such requirements in the separation agreement or the dissolution court's orders and no findings by the trial court that these orders were necessary in order to protect the integrity of the financial orders.

The defendant testified that although he was unemployed and his income was not presently sufficient to pay alimony to the defendant, he has been involved as a consultant in ventures that he hoped would generate future income. An estimate of when his efforts would result in income was not certain. The trial court therefore suspended the defendant's alimony payments until such time as he would be financially able to resume them. "The equitable authority of the Superior Court to render such orders as may be required to protect the integrity of its judgments in dissolution matters is clear." *Turgeon* v. *Turgeon*, 190 Conn. 269, 284, 460 A.2d 1260 (1983). The trial court determined that it was reasonable for the plaintiff to be made aware of

employment and income of the defendant so that the matter could be brought to court as soon as possible and the alimony payments resume. The court was protecting the integrity of its alimony orders. We find no abuse of discretion by the court in making these orders.

V

The defendant claims finally that the trial court committed a mathematical error in its finding regarding an alimony arrearage. Specifically, the defendant argues that the modified alimony order of July, 1996, was that the defendant pay $3,500 *per week* and that any calculation of arrearage based on alimony payments of $3500 per month is incorrect. We disagree.

A reading of the court's opinion clearly shows that the statement "the court reduced the alimony to $3500 *per week*" (emphasis added) contained within it a transcription error. Because the alimony payment before the July 30, 1996 hearing was $4000 per month, a reduction of the payment to $3500 *per week* is obviously a transcription error and we will view it as such. See *Rolla* v. *Rolla*, 48 Conn. App. 732, 735 n.1, 712 A.2d 440, cert. denied, 245 Conn. 921, 717 A.2d 237 (1998). The defendant has not presented evidence, i.e., mathematical calculations, that would allow this court to conclude that he was prejudiced by this typographical error or that the court improperly found the arrearage.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.

MIHALAKOS, J., dissenting. I respectfully dissent. The primary issue in this appeal is whether the court improperly suspended the defendant's alimony payments. The defendant argues that the trial court lacked authority to suspend his alimony payments under the circumstances of this case. There is no provision in any Connecticut statute that permits suspension of alimony

payments other than General Statutes § 46b-86 (b),[1] commonly called the "cohabitation statute." Clearly, cohabitation is not an issue in this case. The only other statute that addresses a change in alimony payments is General Statutes § 46b-86 (a), which provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in circumstances of either party . . . ." There is no reference to "suspension" in § 46b-86 (a). The statute is clear and unambiguous. If the legislature had intended to provide for suspension of alimony payments as a measure of relief under § 46b-86 (a), it could have done so.

The resolution of this issue requires us to interpret the statutory language in light of the purpose and policy behind the enactment. Section 46b-86 (a) permits modification upon a showing of a substantial change of circumstances. To permit a modification in payments, but to continue the obligation to pay the accumulated arrearage to some time in the future, would defeat the purpose and necessity of requiring a "substantial change in circumstances." If the legislature had so intended, it would have used the term "suspension" in § 46b-86 (a). Furthermore, the plaintiff has not provided

[1] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

this court with any authority or case law to support the suspension of alimony under § 46b-86 (a). The plaintiff's reliance on *Lasprogato* v. *Lasprogato*, 127 Conn. 510, 18 A.2d 353 (1941), is misplaced. That case involved a separate contract action to enforce the provisions of the separation agreement. Here, the relief sought was pursuant to § 46b-86 (a), not under a separate civil contract action.

The plaintiff would have us include "suspension" within the meaning of the word "alter." Statutory construction does not permit such a leap. I would, therefore, reverse the judgment of the trial court and remand the matter for a new trial.