## RICHARD BLITZ *v.* ARTHUR SUBKLEW
### (AC 22332)

Flynn, West and Hennessy, Js.

Argued October 18—officially released December 17, 2002

*Thomas G. Benneche,* for the appellant (plaintiff).

*Steven H. Levy,* for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff, Richard Blitz, appeals from the judgment of the trial court rendered in favor of the defendant, Arthur Subklew, after a trial to the court. On appeal, the plaintiff claims that the court improperly (1) found that the zoning board of appeals of the town of Goshen (board) would not grant the defendant's application for a used car sales license and that the defendant therefore was not liable under a lease in which a condition precedent was the approval of such an application, and (2) awarded the defendant the return of his security deposit.

The following facts are necessary for the resolution of the plaintiff's appeal. The plaintiff owns a piece of commercial property at 4 Old Middle Street, Goshen. On February 2, 1998, the defendant entered into a lease with the plaintiff to rent the rear portion of the property. The defendant intended to operate an auto sales and repair business. Paragraph C of the lease was a zoning contingency clause that stated, "Landlord [plaintiff] will use Landlord's best efforts to obtain a written verification that Tenant [defendant] can operate [an] Auto Sales and Repair Business at the demised premises. If Landlord is unable to obtain such commitment from the municipality, then this agreement shall be deemed null and void and Landlord shall immediately return all deposit monies to Tenant." The leasing period would commence on or about March 1, 1998, and conclude on or about February 28, 2013. The leasing agreement also stated that the first two months of occupancy

would be free of charge to allow the defendant an opportunity to establish the business.

The court found that the evidence presented at trial indicated that the defendant believed that the property was already zoned for automotive sales because a prior business on the property involved both tractor sales and repair. The defendant and a witness testified that the plaintiff stated that only the town zoning officer's signature was required for the zoning application and it was only a formality.[1] It later was determined that the zoning officer would not sign the application and that approval from the board was required for the defendant's proposed business. The *defendant* then filed an application with the board.

The board met on both March 5, 1998, and April 2, 1998, concerning the defendant's application. On April 3, 1998, the defendant notified the plaintiff that he wanted to rescind the commercial lease because the plaintiff was unable to obtain approval pursuant to paragraph C of the leasing agreement.

The court heard evidence from the parties concerning the board meetings and reviewed the minutes and tapes of the board meetings. The court concluded that the board "would not grant the defendant's application to allow automobile sales use on the premises." The court also stated that "the language [of the lease] is clear and unambiguous that the plaintiff as landlord was to obtain written verification that the subject premises were properly zoned so that the defendant could operate an auto sales and repair business. There was no evidence provided by the plaintiff, either through testimony or by way of exhibits, that provided proof to the court that the plaintiff had obtained zoning approval to operate an

---

[1] The plaintiff testified that he "thought the property might be grandfathered in as a motor vehicle accepted property because it had been previously occupied by a tractor sales and repair dealership."

auto sales and repair business at the subject premises. By the very language in paragraph C, the commercial lease becomes null and void if the plaintiff fails to provide such written verification." We agree with the court's reasoning and conclusion.

On appeal, the plaintiff challenges the court's finding that the board would not grant the defendant's application to operate an automobile sales business on the property. The plaintiff also argues that the defendant waived the condition precedent in paragraph C when he agreed at the public hearing that preceded the April 2, 1998 board meeting to have a parts and service business with no used automobile sales.

"The standard of review with respect to a court's findings of fact is the clearly erroneous standard. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 11–12, 807 A.2d 991 (2002).

The mechanically recorded tapes of the public hearing on April 2, 1998, indicate the following facts. The board members believed, on the basis of the defendant's application, which had been discussed at the March 3, 1998 board meeting, that the defendant would be operating an automotive repair business with a few used car sales. During the April 2, 1998 public hearing, the defendant clarified that a few used car sales would entail ten to fifteen cars on the lot at one time. The

board members indicated that they had not inspected the property with the intention of authorizing that many cars on the lot and could not render a decision during the April 2, 1998 meeting.

The board members expressed a desire to visit the property a second time with the intention of inspecting the property for the appropriateness of authorizing such a use. Presumably, following the next site inspection, the board would then be able to render a decision on the application for automobile sales at the next meeting. The defendant then stated to the board that another thirty day delay to give the board an opportunity to view the property would mean that he would be unable to go through with the project because of time limits on the financial funding that he had procured to finance his new business.

The plaintiff claims that the defendant then waived the portion of the application that dealt with used automobile sales and agreed to accept a license for automobile repair only. Several times during that portion of the hearing, the defendant did state that he would consider the option of an automobile parts and repair business only, however, *on the condition* that he and the plaintiff could renegotiate the lease.[2]

The defendant clearly told the board at the April 2, 1998 public hearing that under the terms of the current lease as stated, he would not be able to operate a viable business if he were granted authorization to operate only a repair business without the used automobile sales. It is clear from the record that the defendant did not waive paragraph C of the lease.

In addition, the minutes of the April 2, 1998 board meeting indicate that the board's chairman "stated that

---

[2] At the trial, the plaintiff also testified that the defendant stated at the April 2, 1998 hearing that the lease would need to be renegotiated if only an automobile repair license was granted.

[the board] can approve this motor vehicle location as General Repair only. . . . [T]he application for motor vehicle location as General Repair . . . [p]assed unanimously."

The court was also presented with the minutes from a June 3, 1999 board meeting, which occurred one year after the defendant's application had been submitted. The minutes from that meeting indicate that a prospective applicant, not associated with the defendant, had applied for a used car dealership on the same property. The minutes indicate that the prospective applicant was told "a similar application was previously applied for in April, 1998, and was denied . . . ." That reference to a denial of the defendant's application during the April 2, 1998 meeting further supports the defendant's position and the court's finding that the board would not grant the defendant's application for a used automobile sales business on the property.

Paragraph C of the commercial lease states that the *plaintiff* shall obtain written verification that the defendant can operate a used automobile sales business on the property. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Cadle Co.* v. *Ginsberg*, 70 Conn. App. 748, 761, 802 A.2d 137, cert. denied, 262 Conn. 905, 810 A.2d 271 (2002); see also *Legg* v. *Legg*, 44 Conn. App. 303, 306, 688 A.2d 1354 (1997). The language of para-

graph C is clear, and it was the *plaintiff landlord's* responsibility to obtain the proper approval for an automobile sales business. It also is evident from the record that the *defendant* took all of the necessary and reasonable steps to facilitate approval of the used automobile sales business. The plaintiff, therefore, cannot hold the defendant responsible for the plaintiff's failure to obtain approval.

It is clear that the plaintiff's obligation to obtain written approval was a condition precedent to the leasing agreement. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. . . . Whether a provision in a contract is a condition the nonfulfilment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." (Citations omitted.) *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951); see also *F & W Welding Service, Inc.* v. *ADL Contracting Corp.*, 217 Conn. 507, 517, 587 A.2d 92 (1991); *Christophersen* v. *Blount*, 216 Conn. 509, 512, 582 A.2d 460 (1990); *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 735, 793 A.2d 1118 (2002).

The event required by the leasing agreement, namely, the plaintiff's obtaining approval of a used automobile sales business for the property, did not occur. The defendant attempted to obtain approval, despite the language that indicated it was the plaintiff's responsibility. Those reasonable efforts proved unsuccessful. The

plaintiff, therefore, cannot enforce the leasing agreement.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

___

[3] The plaintiff's second claim warrants little discussion because it is based on the return of the defendant's security deposit pursuant to paragraph C of the leasing agreement. The language of that portion of the contract is clear and states that the leasing agreement is void, and the plaintiff shall immediately return the security deposit to the defendant if the plaintiff is unable to obtain approval for a used automobile *sales and* repair business. For the reasons stated in this opinion, the court correctly ruled that the plaintiff was obligated to return the defendant's security deposit.