## CAROLE A. MONETTE *v.* CLAUDE MONETTE*
### (AC 25597)

Schaller, Rogers and Mihalakos, Js.

---

\* On July 6, 2007, the state filed a motion for reconsideration and reconsideration en banc. On September 14, 2007, the appellate panel that heard this appeal granted reconsideration, set aside this decision, remanded the matter to the trial court for further proceedings with the participation of the attorney general and, sua sponte, dismissed the defendant's appeal.

1

Argued October 18, 2006—officially released June 26, 2007

*Norman A. Roberts II*, with whom was *Anthony L. Cenatiempo*, for the appellant (defendant).

*Judith Ellenthal*, with whom was *Keenan-Marie McMahon*, for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. The defendant, Claude Monette, appeals from the judgment of the trial court rendered in favor of the plaintiff, Carole A. Monette, his former wife. The defendant claims that the court improperly (1) found that he had obtained gainful employment subsequent to the parties' divorce, (2) failed to make a finding of a substantial change in circumstances that warranted modification of child support, (3) relied on his failure to exercise his parenting time as a basis for modifying child support, (4) failed to base its child support orders on net income and (5) awarded counsel fees to the plaintiff. We conclude that the plaintiff's evidence was insufficient to support the court's determination that the defendant was gainfully employed.[1] Accordingly, we reverse the judgment of the trial court.

---

[1] Because our resolution of the first claim is dispositive of the appeal, we need not reach the remaining issues raised by the defendant.

Article 2.04 of the parties' separation agreement, titled "Consent to Judgment" and executed as part of the dissolution proceedings in Canada in 2003, provided that the parties would "make diligent efforts to resolve the

The following facts and procedural history are relevant to the resolution of the defendant's appeal. The parties were married on December 11, 1993, in Gloucester, Massachusetts. Two daughters were born of this marriage, both of whom are still minors, now ages nine and seven. The parties resided in Canada when the divorce proceedings began, but the plaintiff has since moved to Connecticut with the minor children. The defendant resides in Canada.

The family division of the superior court of the province of Quebec, located in the district of Montreal, rendered judgment of divorce on August 19, 2003. As agreed on by the parties, the judgment of divorce incorporated by reference a separation agreement known as the consent to judgment.[2] In accordance with the consent to judgment, the parties agreed, inter alia, that the plaintiff would have full legal and physical custody of the children and that the defendant would have liberal visitation privileges. The consent to judgment gave the defendant liberal access to the minor children in that the children would spend approximately one third of each year with him. The parties attached a proposed visitation schedule for 2003 to the consent to judgment.[3]

The parties further agreed that each parent would assume the day-to-day living expenses of the minor

child support issue prior to Court intervention *as soon as the [defendant] has ascertained gainful employment.*"(Emphasis added.)

[2] On November 6, 2003, the plaintiff filed with the Superior Court in the judicial district of Stamford-Norwalk a certified copy of the divorce judgment that was rendered by the Canadian court. Notice of the plaintiff's filing was served on the defendant in Canada on November 18, 2003. Our statutes do not permit the domestication of foreign judgments that have been rendered by the courts of another country. See General Statutes §§ 46b-70 and 46b-71. For this reason, the court recognized, under the principle of comity, the parties' judgment of divorce, as part of the June 16, 2004 child support order, so that the order could be enforced in Connecticut.

[3] According to this schedule, the defendant was to spend ninety-five days of the year with the children.

children when the children were under their respective care. At the time of the divorce decree, neither of the parties was employed, and under Canadian law, the family court is not permitted to issue child support orders if a parent is earning fewer than $10,000 Canadian (CDN) a year. Article 2.04 of the consent to judgment, however, provided that the parties would "make diligent efforts to resolve the child support issue prior to Court intervention as soon as the [defendant] has ascertained gainful employment."

On December 9, 2003, the plaintiff filed an application with the Superior Court in the judicial district of Stanford-Norwalk for an order to show cause, alleging that there was a substantial change in circumstances and that the defendant had failed to comply with certain terms of the consent to judgment. On that same day, the plaintiff also filed motions for modification of child support and contempt postjudgment. The plaintiff's motion for modification of child support alleged that the defendant had funds available to him from the sale of the parties' family residence in Canada and that he had "other interest income available to him to pay child support." The motion for modification did not seek attorney's fees. The plaintiff's motion for contempt alleged that the defendant failed to pay for his portion of the cost associated with obtaining health insurance for the minor children, as well as the children's medical expenses. In this motion, the plaintiff also requested that the court order the defendant to provide documentation indicating that the children had been designated as the sole beneficiaries of the defendant's life insurance policies and retirement plans. Finally, the plaintiff's motion for contempt sought attorney's fees.

Subsequently, after having been granted several continuances in this matter, the plaintiff, on March 3, 2004, filed revised motions for modification of child support

and for contempt.[4] The new motion for modification of child support alleged that there had been a substantial change in circumstances in that the defendant had failed to exercise his rights of visitation with the minor children and that he therefore had not helped the plaintiff with the children's day-to-day living expenses. Additionally, the plaintiff claimed that the defendant violated article 2.05 of the consent to judgment[5] in that he received gross income of $413 on a weekly basis in the form of unemployment benefits and had failed to notify the plaintiff. Similar to the December, 2003 motion for modification, this new motion did not seek attorney's fees. The new motion for contempt was essentially the same as the motion filed by the plaintiff in December 2003, except that it also alleged a violation of article 2.05.

The court considered the plaintiff's application for an order to show cause, as well as her March, 2004 motions for modification of child support and for contempt, at a hearing that was held on June 16, 2004.[6] At this hearing, the court accepted into evidence income tax returns filed by the parties for the years 1993 through and including 2003, representing the start and end of the marriage.[7] Regarding the 2003 income tax return, the plaintiff testified that subsequent to the

[4] The plaintiff also filed another application for an order to show cause on this date, but the application substantially was similar to the previous application filed on December 9, 2003.

[5] Article 2.05 provided in relevant part that "each party undertakes to advise the other in writing of any change in their employment or revenues, and of the details thereof, within a week of such change, and further, to exchange copies of their respective Income Tax returns by May first of each year . . . ."

[6] At the hearing, the court expressly stated that it was considering the motions that were numbered 109 and 110 on the docket sheet, which correspond with the March, 2004 motions. Neither the defendant nor his counsel attended this hearing.

[7] The plaintiff testified that during the marriage, the defendant earned an average of approximately $385,000 in United States currency annually.

divorce decree, "the Canadian court ordered [the defendant] to produce his [2003] income tax return, and we discovered that indeed he was making—earning money." The plaintiff, however, explained that the defendant never fully complied with the Canadian court order because he produced only a Canadian income tax return for the year 2003 and not a United States income tax return. The plaintiff testified that she did not know what the defendant's United States income would be for the year 2003. The Canadian tax return indicated that the defendant had CDN $28,000 in income,[8] and the plaintiff's counsel stated that this figure represented net, rather than gross income. During the hearing, the plaintiff's counsel confirmed that the issue was not whether the defendant had committed a fraud on the court when he declared that he had no income at the time of the divorce proceedings, but whether he had earned money *since* the divorce.

At the hearing, the plaintiff claimed that because the defendant failed to exercise his visitation rights in accordance with the visitation arrangement that was devised by the parties and made a part of the consent to judgment,[9] she became responsible for more of the children's day-to-day living expenses than was anticipated by the parties' agreement and must now seek child support. The plaintiff testified that because of the defendant's employment history, she expected to receive child support from him "in the very near future." She further testified that when the parties executed the consent to judgment, the defendant "was out of work, and he's good at what he does, so, worst case scenario, we thought he would pick something up . . . . [W]hen he was employed before . . . he would do chairman

[8] The court took judicial notice of the fact that CDN $28,000 is worth $20,324.19 in United States currency.

[9] The plaintiff testified that the defendant visited the children only once, during a long weekend in March.

of the board, and they paid him to attend that meeting; they paid him $150,000 a year to just show up one night a week. . . . . So, I expected . . . he'll do something like that, and he said he was looking for a job." In support of her claim, the plaintiff submitted financial affidavits that indicated the costs she had incurred in caring for the minor children. In addition to selling her furniture and other personal property to provide income, the plaintiff testified that she currently receives several forms of state aid as a means of support for herself and the minor children.

Immediately after the hearing, the court made several findings with regard to the evidence presented. Concerning the plaintiff's motion for modification of child support, the court found, on the basis of the defendant's earning capacity, educational background, prior job history and the ten year period of tax returns submitted by the plaintiff, that the defendant had the ability to earn $300,000 annually. On the basis of its findings, the court ordered the defendant to pay to the plaintiff $5000 each month for child support, retroactive to December 18, 2003, in accordance with the date on which the plaintiff's motions initially were served on him. The court, however, explicitly found that the defendant did not have any other financial resources available to him that would justify deviation from the child support guidelines. The court also awarded the plaintiff $22,391.30 in attorney's fees in accordance with General Statutes § 46b-62.[10]

---

[10] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

The criteria found in General Statutes § 46b-82 include "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ."

Concerning the plaintiff's motion for contempt, the court concluded that it could not issue any contempt orders because it lacked personal jurisdiction over the defendant. The court found that the defendant was not served with process in Connecticut and that neither he nor his counsel had filed an appearance in Connecticut. The court, however, did make findings on the basis of the allegations of contempt in the plaintiff's motion. The court found that the defendant owed the plaintiff $302.45, representing his share of the children's medical expenses, pursuant to article 2.08 of the consent to judgment.[11] Additionally, the court expressly found that the defendant had obtained gainful employment and that he failed to maintain life insurance policies for the benefit of the children or to provide the plaintiff with documentation of the same, as required by article 2.03 of the consent to judgment.[12] Finally, the court found that the defendant was reemployed in 2003 and that he failed to establish an educational fund for the children, in accordance with article 2.06 of the consent to judgment.[13] This appeal followed. Additional facts will be set forth as necessary.

[11] Article 2.08 provided in relevant part that "the [defendant] will maintain in force all existing health insurance plans . . . . [T]he [plaintiff] will obtain similar medical coverage for the children in the United States and the parties agree to then share the cost of this new plan . . . and share equally any uninsured medical, dental, optical, pharmaceutical and orthodontic expenses of the minor children."

[12] Article 2.03 provided in relevant part that "both parents agree to keep a minimum of $200,000.00 U.S. term life insurance on their lives with the children as sole beneficiaries . . . . This minimum will be increased to $500,000.00 U.S. within 30 days from the time the [defendant] ascertains gainful employment."

[13] Article 2.06 provided in relevant part that "the [defendant] agrees that as soon as he is re-employed, and within two months of such re-employment, he shall establish a college, university or any other form of ongoing education savings program for the children . . . to satisfy future college tuition needs."

The defendant claims that the court improperly found that he had attained gainful employment since the divorce.[14] We agree.

Before the court could consider the plaintiff's request for child support, it had to determine whether it was authorized to do so by the terms of the consent to judgment. The consent to judgment is to be regarded and construed as a contract because it was incorporated into the divorce decree. See *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000).

We begin by setting forth the applicable standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there

---

[14] This court has held that "[t]he court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . The inquiry, then, is limited to a comparison between the current conditions and *the last court order.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Crowley* v. *Crowley*, 46 Conn. App. 87, 92, 699 A.2d 1029 (1997). In the present case, the divorce decree, which incorporated by reference the consent to judgment, remains in effect as the last court order from which the plaintiff may seek relief.

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 9–10, 787 A.2d 50 (2001).

Article 2.04 of the consent to judgment provided that the child support issue could be revisited when the defendant obtained gainful employment. In other words, the defendant's gainful employment was a condition precedent that had to be satisfied before the plaintiff could seek child support. As a result, to comply with article 2.04, the plaintiff had to produce evidence demonstrating that the defendant had been gainfully employed since the divorce.[15]

At the June 16, 2004 hearing, the plaintiff testified that she discovered that the defendant was earning money, on the basis of the 2003 income tax return the

[15] From a procedural standpoint, however, it does not appear that the allegations in the plaintiff's March, 2004 motion for modification permit the plaintiff to get this far. Practice Book § 25-26 (e) provides that a motion for modification of child support "shall state the specific factual and legal basis for the claimed modification and shall include the outstanding order and date thereof to which the motion for modification is addressed."

A court's modification of a child support order on the basis of grounds not alleged in the motion constitutes an abuse of discretion. *Prial* v. *Prial*, supra, 67 Conn. App. 13. The March, 2004 motion, on its face, was insufficient to enable the court to consider the plaintiff's request for child support. Nowhere in this motion did the plaintiff allege that the defendant was gainfully employed, in accordance with the consent to judgment.

The only reference to employment in the plaintiff's March, 2004 motion for modification can be found in paragraph seven, in which the plaintiff stated that "there have been substantial changes in the circumstances of the parties in that . . . [o]n or about October 5, 2004, the defendant has been receiving gross weekly unemployment benefits in the amount of $413.00 . . . ."

Receipt of unemployment benefits is most likely proof that the beneficiary was *not* gainfully employed. It is clear that the March, 2004 motion for modification did not satisfy the requirements of Practice Book § 25-26 (e), and the court, therefore, abused its discretion in modifying the child support order on the ground that the defendant was employed in 2003.

defendant produced in response to a Canadian court order. This tax return indicates that the defendant earned CDN $23,170.24 from self-employment income, categorized as business income. The plaintiff's testimony, however, ignores the fact that the tax return does not provide any information as to *when in fact* the defendant received such income. The only information that is clear from the record is that *at the time of the divorce,* both parties were unemployed. The plaintiff, however, never testified as to how long the defendant had been unemployed. It is quite possible that the defendant received this income during the first quarterly period of the year 2003, rather than after the divorce, as the plaintiff claims, and then subsequently was unemployed as stipulated in the consent to judgment. In sum, the tax return, by itself, is insufficient evidence to establish whether the defendant was gainfully employed after the divorce.

Finally, the plaintiff's testimony does not provide this court with any additional guidance on this matter. There is no testimony from the plaintiff that the defendant was gainfully employed, and the plaintiff testified that she did not know what the defendant's United States income would be for the year 2003. Although the plaintiff's counsel stated that the income figure on the Canadian tax return indicated that the defendant had CDN $28,000 in net income, representations made by counsel are not evidence. *Prial* v. *Prial,* supra, 67 Conn. App. 14; *Savage* v. *Savage,* 25 Conn. App. 693, 696, 596 A.2d 23 (1991). Without any testimony from the plaintiff on these issues, and because the tax return does not indicate when the defendant earned this income, the evidence presented was insufficient for the court to conclude as it did. Considering the alleged facts and evidence presented, we conclude that the court's findings of fact as to whether the defendant attained gainful

employment after the parties' divorce were clearly erroneous.

The concurring opinion would reverse the court's judgment on other grounds.[16] We are mindful of the

---

[16] The concurring opinion concludes that the trial court made no finding as to the meaning of article 2.04 to the consent to judgment, that article 2.04 said nothing about seeking court intervention to resolve the child support issue and did not establish a condition precedent and that our interpretation of article 2.04 has dire consequences for the plaintiff and her children.

The court did in fact make a finding as to the meaning of article 2.04. In its June 16, 2004 order, the court found: "That article II . . . provision 2.04 refers to no other alimentary considerations to be determined *at this time* for the children and also . . . anticipates increased revenues for the defendant . . . [t]hat article II . . . read in its entirety does anticipate that *child support would be forthcoming, as the defendant would not remain unemployed* and without revenues for a long period of time . . . ." (Emphasis added.)

In short, the court interpreted article 2.04 to mean that the plaintiff could not seek child support for the minor children "at this time," meaning at the time the consent to judgment was signed by the parties, but that article 2.04 anticipated that child support could be sought *when the defendant became employed.*

Additionally, article 2.04 also mentions seeking court intervention for child support relief. Article 2.04 expressly states that "[t]he parties agree that they will make diligent efforts to resolve the child support issue prior to [c]ourt intervention as soon as the [defendant] has ascertained gainful employment." The plain language of this provision indicates that the parties would try to reach an agreement with regard to child support by themselves, and, if their efforts were unsuccessful, they could turn to the courts for resolution of the matter.

We disagree with the concurring opinion's conclusion that the language of article 2.04 fails to establish a condition precedent. The concurrence compares the language found in articles 2.03 and 2.06 of the consent to judgment, with that of article 2.04, to point out that unlike article 2.04, the former two provisions demonstrate a clear intention to establish a condition precedent.

Article 2.03 expressly provides that "both parents agree to keep a minimum of $200,000 U.S. term life insurance . . . with the children as sole beneficiaries . . . . This minimum will be increased to $500,000 U.S. *within 30 days from the time the [defendant] ascertains gainful employment.*" (Emphasis added.) Article 2.06 expressly provides that the defendant "agrees that *as soon as he is re-employed, and within two months of such re-employment,* he shall establish a[n] . . . education savings program for the children . . . ." (Emphasis added.)

The absence of a time frame in article 2.04 is not fatal to the interpretation that it establishes a condition precedent. The only difference between these two provisions and article 2.04 is that the latter provision does not indicate

court's findings and disagree with several of its conclusions for the reasons stated elsewhere in this opinion.

Because we have concluded that the court improperly determined that the defendant had attained gainful employment after the divorce, his second claim on appeal, involving whether the court failed to make a finding of a substantial change in circumstances that

a specified deadline, after the defendant has obtained employment, by which he must comply with the provision's terms. Although the defendant's deadline for compliance is not the same in articles 2.03 and 2.06, as article 2.03 requires compliance within thirty days, and article 2.06 requires compliance within two months, the starting point for his compliance under these two provisions remains the same: the clock starts *when* the defendant becomes employed.

We also note that both article 2.04 and 2.06 use the same "when" language. Article 2.06 provides that the defendant must establish an educational fund "*as soon as* [the defendant] is re-employed," and article 2.04 provides that the parties will try to resolve the child support issue "*as soon as* [the defendant] has ascertained gainful employment." (Emphasis added.) The fact that there is no deadline within which the parties must comply with article 2.04 appears to indicate an intention of the parties to resolve the matter *immediately*, rather than in one month or even two month's time after the defendant becomes reemployed.

Finally, the record indicates that under Canadian law, the family court is not permitted to issue child support orders if a parent is making fewer than CDN $10,000 a year. It is Canadian law, rather than article 2.04, that sets a threshold requirement that must be satisfied before a parent may seek child support. It appears that article 2.04, when viewed as a condition precedent, is an attempt to comport with this Canadian law because it provides that child support can be sought "as soon as the defendant has ascertained gainful employment."

Unfortunately for the plaintiff in this particular case, our interpretation of article 2.04 has dire consequences for her and her minor children. In the absence, however, of any evidence indicating that the consent to judgment was a product of fraud or was unfair or unconscionable, the consent to judgment is a contract that must be enforced according to its terms. General Statutes § 46b-86 (a) sets forth a limitation on which child support orders can be modified by the court because it provides in relevant part that "[u]nless and *to the extent that the decree precludes modification* . . . any final order for the periodic payment of . . . support . . . may . . . be . . . modified . . . ." (Emphasis added.) Article 2.04, a provision of the consent to judgment that was incorporated into the divorce decree, provides that child support relief may be sought as soon as the defendant has obtained employment. It does not provide that such relief may be sought as soon as the defendant has obtained employment *or any other sources of income.*

warranted modification of child support, becomes a nonissue. The court's authority to modify child support orders is found in General Statutes § 46b-86 (a), which provides in relevant part that "[u]nless and *to the extent that the decree precludes modification* . . . any final order for the periodic payment of . . . support . . . may . . . be . . . modified . . . upon a showing of a substantial change in the circumstances of either party . . . . " (Emphasis added.) In accordance with § 46b-86 (a), although the plaintiff would have had to show that a substantial change in circumstances occurred, she could reach this second hurdle only *after* having shown that the defendant was gainfully employed, because this condition was the limitation to which she agreed on, having signed the consent to judgment. Because the plaintiff failed to demonstrate, as required by the consent to judgment, that the defendant was gainfully employed, the court was effectively precluded from granting her any relief at this time.[17]

[17] We are not in any way indicating that the consent to judgment is an absolute bar to modification of child support. We recognize that although provisions precluding modification tend to be disfavored, they will be upheld if they clearly and unambiguously restrict a later court's power to modify financial orders. *Eldridge* v. *Eldridge*, 4 Conn. App. 489, 493–94, 495 A.2d 283 (1985). We also recognize that an award of child support will be treated as modifiable when the order purporting to preclude modification is ambiguous. See *Scoville* v. *Scoville*, 179 Conn. 277, 280, 426 A.2d 271 (1979).

Our analysis in this case is only that modification of child support is permitted under the consent to judgment but that it is precluded until the condition precedent has been met. We distinguish this case from the facts and circumstances presented in *Rau* v. *Rau*, 37 Conn. App. 209, 655 A.2d 800 (1995), *Burke* v. *Burke*, 94 Conn. App. 416, 892 A.2d 964 (2006), and *Sheehan* v. *Balasic*, 46 Conn. App. 327, 699 A.2d 1036 (1997), appeal dismissed, 245 Conn. 148, 710 A.2d 770 (1998), which all concerned whether the alimony award or child support order at issue could be modified *at all*, given the language in the original dissolution decrees.

In *Rau* v. *Rau*, supra, 37 Conn. App. 212, the language in the original divorce decree stated that the alimony award was to terminate after ninety-six payments were made. This court concluded that because the divorce decree contained no express, clear language precluding modification of the award, the award was modifiable. Id., 212–13. In *Burke* v. *Burke*, supra, 94 Conn. App. 418, the language in the original dissolution judgment stated

The merits of the defendant's third and fourth claims, that the court improperly relied on the defendant's failure to exercise his parenting time as a basis for modifying child support and that the court failed to base its child support orders on net income, also do not need to be reached. As the court had no authority to modify child support, any basis the court used in making such an order is no longer relevant.

As for the defendant's final claim, we are mindful that the plaintiff's March, 2004 motion for modification did not specifically request attorney's fees. Nevertheless, we do not need to address the issue of whether

that the defendant would pay to the plaintiff $240 in unallocated alimony and child support until the youngest child reached the age of eighteen. Again, this court concluded that this language lacked the clear and unambiguous statement of nonmodifiability required by § 46b-86 (a) and was therefore modifiable. Id., 423.

Finally, in *Sheehan* v. *Balasic*, supra, 46 Conn. App. 327, the language in the supplemental dissolution judgment stated that the defendant would pay unallocated alimony and child support in the amount of $4000 per month and that such payments "shall continue for twenty-four (24) months, nonmodifiable as to amount, except for the death of either party." Id., 330. The trial court had found that although the amount of the award was nonmodifiable on the basis of this language, the twenty-four month term was subject to modification. Id., 332–33. This court, however, noted that the sentence immediately following this language stated: "Thereafter, the alimony award shall be subject to modification or termination for a number of reasons, including the plaintiff's remarriage." (Internal quotation marks omitted.) Id., 333. On the basis of this language, we concluded that the award was nonmodifiable as to that twenty-four month time period. Id.

We reiterate that in all of the previously discussed cases, the party opposing the motion to modify argued that the language in the divorce decree made the award of alimony or child support *nonmodifiable*. That is not the issue here. In fact, we note that the divorce decree in this case *specifically permits* modification of child support because it states: "The parties agree that they will make diligent efforts to resolve the child support issue prior to [c]ourt intervention as soon as the [defendant] has ascertained gainful employment." In short, there were no restraints on the plaintiff's efforts to seek relief, except for the condition that the defendant be gainfully employed. Under these circumstances, the court was effectively precluded from granting the plaintiff relief, not because the consent to judgment precluded modification of child support, but only because the condition precedent in article 2.04 of the consent to judgment had not yet been satisfied.

due process required that the defendant be given notice that the plaintiff sought attorney's fees. Because the plaintiff filed a motion seeking child support, the court's statutory authority to award attorney's fees stemmed from § 46b-62, which provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order . . . if such proceeding concerns the . . . support of a minor child, either parent to pay the reasonable attorney's fees of the other . . . ."

The judgment awarding attorney's fees must be reversed nonetheless because the trial court's basis for the award was improper. The court's award of attorney's fees was predicated on financial information with regard to the defendant's alleged gainful employment that was not in the record, as previously discussed. The court's award of attorney's fees, therefore, amounted to an abuse of discretion.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion SCHALLER, J., concurred.

SCHALLER, J., concurring. Although I agree that the judgment must be reversed, I respectfully disagree with the majority's conclusion that article 2.04 of the parties' consent to judgment agreement contained a condition precedent that prohibited the plaintiff, Carole A. Monette, from seeking modification of child support until she could establish that the defendant, Claude Monette, had obtained gainful employment.[1] I conclude, instead, that the trial court failed to find a substantial change in circumstances prior to modifying the child

---

[1] I agree with reversal of the award of attorney's fees because they were claimed only in the plaintiff's motion for contempt, which was not granted by the court. No notice was given to the defendant of any other claim for attorney's fees.

support order as required by General Statutes § 46b-86. I would reverse the judgment of the trial court on that ground.

I agree with the majority that the consent to judgment agreement of the parties constitutes a contract of the parties. See *Williams* v. *Williams*, 276 Conn. 491, 497, 886 A.2d 817 (2005). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, 96 Conn. App. 75, 79, 899 A.2d 76, cert. denied, 280 Conn. 907, 907 A.2d 89 (2006); see also *Scoville* v. *Scoville*, 179 Conn. 277, 282, 426 A.2d 271 (*Healy, J.*, dissenting).

The relevant portion of article 2.04 of the parties' agreement reads as follow: "[A]s neither party is presently employed, no [child support] will be determined at this time for the children. The parties agree that they will make diligent efforts to resolve the child support issue prior to Court intervention as soon as the [defendant] has ascertained gainful employment. That all eventual [support] payments for the children shall be made through the automatic perception system, or through the corresponding U.S. agency were the [defendant] to move to the United States . . . ."[2]

[2] The choice of the word "ascertained" suggests that the parties thought it would be prudent to begin discussing child support when the defendant had discovered or learned with certainty about gainful employment. The focus of the parties on when they would begin attempting to resolve the issue is clear.

My colleagues in the majority conclude that the relevant clause, which provides when the parties intend "to resolve the child support issue," constitutes a *condition precedent* that requires the plaintiff to establish that the defendant is gainfully employed *before* she can seek a child support order in court.[3] In my view, the plain language of article 2.04 does no more than express the parties' intention as to the appropriate time when they should undertake a diligent effort to resolve between themselves the issue of child support. It does not, by any means, create a threshold requirement that must be satisfied before the plaintiff is allowed to seek an order of child support. A statement of intention to resolve the issue between themselves is far different from a condition precedent intended to bar a party from court intervention for child support. By virtue of article 2.03, the parties demonstrated their ability to specify

[3] I note that it does not appear that the issue of a condition precedent was raised before the trial court. The defendant did not appear in court to contest the plaintiff's motion for modification of child support, although he was properly notified. It is well established that "[w]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Histen* v. *Histen*, 98 Conn. App. 729, 737, 911 A.2d 348 (2006); *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 526–27, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006); see also Practice Book § 60-5.

Moreover, because the issue was not raised at trial and the court made no finding as to the meaning of article 2.04, to the extent that it is an issue of fact; see *K. A. Thompson Electric Co.* v. *Wesco, Inc.*, 27 Conn. App. 120, 126, 604 A.2d 828 (1992); the majority is engaging in fact-finding, which is not an appropriate function of an appellate court. "[Appellate courts] . . . may not retry a case. . . . The [fact-finding] function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." (Internal quotation marks omitted.) *Welsch* v. *Groat*, 95 Conn. App. 658, 666, 897 A.2d 710 (2006).

when a condition precedent was intended. In that article, they provided that the amount of life insurance would automatically increase when the defendant "ascertains gainful employment . . . ." No such language was used in article 2.04.

The contract provides another example of the parties' ability to create a condition precedent. Article 2.06 states in relevant part: "That the [defendant] agrees that as soon as he is re-employed, and within two months of such re-employment, he shall establish a college, university or any other form of ongoing education savings program for the children, and shall invest therein an amount proportionately commensurate with his income to satisfy future college tuition needs." The language used by the parties regarding the children's future education demonstrates their intent that the defendant is not required to begin such a fund *until* he has been reemployed. At that time, the condition precedent is satisfied, and the defendant must complete his contractual obligation, that is, establish a college fund within two months. Comparing the language used in article 2.06 with that contained in article 2.04, it is apparent that the former is a clear demonstration of the parties' intent to establish a condition precedent, while the latter remains nothing more than a description of the appropriate time to begin discussing the issue among themselves.

Our Supreme Court has stated that "[w]hether the performance of a certain act by a party to a contract is a condition precedent . . . depends on the intent of the parties as expressed in the contract and read in light of the circumstances surrounding the execution of the instrument." (Internal quotation marks omitted.) *Christophersen* v. *Blount*, 216 Conn. 509, 512, 582 A.2d 460 (1990); see also *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 56, 873 A.2d 929 (2005); *Blitz* v. *Subklew*, 74 Conn. App. 183, 189, 810 A.2d 841 (2002).

The majority's interpretation of article 2.04 has dire consequences for the plaintiff and her children. If the defendant were to acquire income or assets by means other than employment in an amount that would qualify as a substantial change in circumstances, the plaintiff would be precluded from seeking a court order of child support because she would be barred by the "condition precedent" found by the majority. The defendant would be insulated from claims of child support as long as he is not gainfully employed, despite having acquired substantial resources and income. The children of the marriage would thereby be denied access to support. Such a result runs contrary to the purpose of child support, which is to provide for the care and well-being of minor children. *Battersby* v. *Battersby*, 218 Conn. 467, 473, 590 A.2d 427 (1991); see also *Foster* v. *Foster*, 84 Conn. App. 311, 322, 853 A.2d 588 (2004). It is elementary to conceive of various alternate ways in which the defendant could obtain income and assets outside of gainful employment, including inheritance, gift, investment income, sale of assets or property.

In reviewing the contract, and the circumstances surrounding its execution, it does not appear that the parties, in drafting the consent to judgment agreement, could have intended or envisioned such a drastic and unfair result. That is evidenced by the fact that the language of article 2.04 addressed only the parties' mutual obligation to resolve the issue and said nothing about seeking court intervention. A statement of what the parties may have anticipated to be a suitable time to begin negotiations about support should not be transposed into a condition precedent that bars the plaintiff from access to child support.

I would reverse the judgment on the ground that the court failed to find a substantial change in circumstances. "General Statutes § 46b-86 governs the modification of a child support order after the date of a

dissolution judgment. . . . [A] child support order cannot be modified unless there is (1) a showing of a substantial change in the circumstances of either party or (2) a showing that the final order for child support substantially deviates from the child support guidelines absent the requisite findings. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances. . . . In these matters, as in other questions arising out of marital disputes, this court relies heavily on the exercise of sound discretion by the trial court. . . .

"Both the substantial change of circumstances and the substantial deviation from child support guidelines provision establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole . . . ." (Citations omitted; internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 173–74, 829 A.2d 885 (2003). The only issue in the present case was whether the plaintiff established a substantial change in the circumstances of either party. See *Sheppard* v. *Sheppard*, 80 Conn. App. 202, 206 n.2, 834 A.2d 730 (2003).

The court set forth several findings in its memorandum of decision. Specifically, it found that the defendant had a change in revenues in that he received income in the amount of CDN $41,000 and that he had received CDN $100,000 as a result of the sale of the marital residence. The court also found that the defendant had an earning capacity of $300,000 per year and

that he had been "reemployed in the calendar year 2003 . . . ."[4] The court, however, did not make a specific finding that there had been a substantial change in circumstances of either party. The individual findings made by the court, whether taken in isolation or in the aggregate, do not replace the necessity of a specific finding of substantial change in circumstances. If we were to infer a substantial change in circumstances from those findings actually made by the trial court, we would be finding facts, a function which we cannot do. *Claveloux* v. *Downtown Racquet Club Associates*, 246 Conn. 626, 633 n.5, 717 A.2d 1205 (1998); *Southington* v. *Commercial Union Ins. Co.*, 71 Conn. App. 715, 721, 805 A.2d 76 (2002).

In the present case, the court did not find that there had been a substantial change in circumstances of either party. Absent such a finding, modification of the child support award was improper. "A party moving for a modification of a child support order must clearly and definitely establish the occurrence of a substantial change in the circumstances of either party that makes the continuation of the prior order unfair and improper." *Savage* v. *Savage*, 25 Conn. App. 693, 696, 596 A.2d 23 (1991); see *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980); *Arena* v. *Arena*, 92 Conn. App. 463, 467, 885 A.2d 765 (2005) ("[O]nce the trial court finds a substantial change in circumstances, it can properly consider a motion for modification . . . . After the evidence introduced in support of the substantial change in circumstances establishes the threshold predicate for the trial court's ability to entertain a motion for modification," that evidence comes into play in the structuring of the modification orders. [Internal quotation marks omitted.]); *Kalinowski* v. *Kropelnicki*, 92 Conn. App. 344, 350, 885 A.2d 194 (2005); *Grosso* v.

---

[4] I agree with the majority that the court's finding that the defendant had been employed was clearly erroneous.

*Grosso,* 59 Conn. App. 628, 631, 758 A.2d 367, cert. denied, 254 Conn. 938, 761 A.2d 761 (2000); *Hayward* v. *Hayward,* 53 Conn. App. 1, 9, 752 A.2d 1087 (1999); *Crowley* v. *Crowley,* 46 Conn. App. 87, 92, 699 A.2d 1029 (1997) ("When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion [to modify]." [Internal quotation marks omitted.]); *Fiddelman* v. *Redmon,* 37 Conn. App. 397, 401, 656 A.2d 234 (1995) ("[t]he court . . . retains continuing jurisdiction to modify final orders for the periodic payment of alimony or support, and the care, custody and visitation of minor children, subject to proof of certain conditions as provided in General Statutes [§ 46b-86]").

I would reverse the judgment on the ground that there was no finding of a substantial change in the circumstances of either party. I agree that resolution of the other issues pertaining to the issue of child support is not necessary.

I respectfully concur.