## WELLS FARGO BANK, N.A. *v.* ERIC LORSON ET AL. (SC 20194)

Robinson, C. J., and Palmer, McDonald, D'Auria, Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendants. The defendants had executed a promissory note, which was secured by the mortgage on the defendants' property. The mortgage, which was guaranteed and insured by the Federal Housing Administration (FHA), was later assigned to the plaintiff. Both the note and the mortgage contained provisions that conditioned the plaintiff's acceleration of the debt owed on the mortgage and the plaintiff's initiation of foreclosure proceedings, in the event of a default, on compliance with the federal Department of Housing and Urban Development (HUD) regulatory requirements. The defendants subsequently defaulted, and the plaintiff accelerated payment of the debt and commenced this foreclosure action. The trial court rendered a judgment of strict foreclosure, from which the defendants appealed to the Appellate Court. On appeal, the defendants claimed, inter alia, that compliance with the applicable HUD regulations was a condition precedent to acceleration of the debt and the initiation of foreclosure proceedings, the plaintiff was therefore required to prove compliance, and, because it had not done so, the trial court's finding that the plaintiff had proven its case was clearly erroneous. The Appellate Court affirmed the trial court's judgment, concluding that the burden was on the defendants to plead and prove noncompliance with the HUD regulations and that they waived that

---

(emphasis omitted; internal quotation marks omitted)). The defendant cannot, therefore, establish prejudice. See, e.g., *United States* v. *Cheyenne*, 855 F.2d 566, 568 (8th Cir. 1988) (no prejudice when dictionary definition was not relevant to only disputed issue); *State* v. *Duncan*, 3 Kan. App. 2d 271, 275, 593 P.2d 427 (1979) ("[w]e agree that the difference in definitions is substantial, but the evidence of [the] defendant's guilt of aggravated assault . . . was overwhelming if not irrefutable"); cf. *State* v. *Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005) ("a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error" (emphasis omitted; internal quotation marks omitted)).

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

special defense because they failed to assert it. On the granting of certification, the defendants appealed to this court, claiming that the Appellate Court had incorrectly determined that the burden was on them to plead and prove noncompliance with the applicable HUD regulations. *Held* that compliance with the applicable HUD regulations is a condition precedent to accelerating the debt and foreclosing on a mortgage that is guaranteed or insured by the FHA, such compliance, contrary to the Appellate Court's decision, must be pleaded and ultimately proven by the plaintiff lender, and, because the trial court did not require the plaintiff to establish compliance with the applicable HUD regulations, the case was remanded for a new trial limited to that issue: this court concluded, on the basis of its review of the applicable HUD regulations, their purpose, and the public policies that the compliance provisions in the note and mortgage were intended to advance, that those compliance provisions were intended to constrain the ability of lenders to accelerate the mortgage debt or foreclose without first providing homeowners with an opportunity to take informed steps to retain their homes, and, accordingly, the compliance provisions served as a condition precedent such that, if the condition of compliance was not fulfilled, the lender's right to acceleration and foreclosure did not come into existence; moreover, there was no merit to the plaintiff's claim that its compliance with the applicable HUD regulations was a condition subsequent rather than a condition precedent, as a lender's failure to comply with the applicable HUD regulations could not suspend a preexisting right to acceleration and foreclosure because there was no identifiable date on which the failure to comply occurred and no defined temporal period preceding the failure to comply during which the right to acceleration and foreclosure could have been asserted; furthermore, this court rejected the plaintiff's argument that, even if compliance with the applicable HUD regulations is a condition precedent to the foreclosure of a mortgage insured by the FHA, the defendant borrower should still shoulder the burden of pleading and proving noncompliance as a special defense, as HUD's policy statement with respect to the compliance provisions at issue and case law concerning that burden did not compel such a conclusion, and a lender is in the best position to know what specific steps it has taken to comply with the HUD regulations; accordingly, this court adopted a burden shifting procedure pursuant to which the plaintiff lender has the initial burden of pleading compliance with the applicable HUD regulations, if the defendant borrower contests compliance, he or she then has the burden of pleading noncompliance, after which the burden shifts back to the plaintiff lender to prove compliance, and, because the trial court never considered whether the plaintiff complied with the applicable HUD regulations, the Appellate Court's conclusion that, even if the burden was on the plaintiff to plead and prove compli-

Wells Fargo Bank, N.A. *v.* Lorson

ance, evidence in the record supported the conclusion that it had met its burden was speculative.

Argued February 26, 2020—officially released December 3, 2021**

*Procedural History*

Action to foreclose a mortgage on certain of the defendants' real property, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Richard P. Gilardi*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment of strict foreclosure, from which the defendants appealed to the Appellate Court, *Elgo*, *Bright* and *Beach, Js.*, which affirmed the trial court's judgment, and the defendants, on the granting of certification, appealed to this court. *Reversed*; *new trial.*

*Ridgely Whitmore Brown*, with whom, on the brief, was *Benjamin Gershberg*, for the appellants (defendants).

*David M. Bizar*, for the appellee (plaintiff).

*J.L. Pottenger*, *Jr.*, *Jeffrey Gentes*, and *Stephanie Garlock* and *Keith Woolridge*, law student interns, filed a brief for the Housing Clinic of the Jerome N. Frank Legal Services Organization as amicus curiae.

*Opinion*

McDONALD, J. The issue that we must resolve in this appeal is whether compliance with federal Department of Housing and Urban Development (HUD) regulatory requirements applicable to mortgage loans guaranteed or insured by the Federal Housing Administration (FHA) is a condition precedent to acceleration of the debt, enforcement of the note, and foreclosure of the mortgage, such that the burden is on mortgagees

---

** December 3, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Wells Fargo Bank, N.A. *v.* Lorson

to plead and prove compliance. The defendants, Eric Lorson and Laurin Maday, executed a mortgage note in favor of The McCue Mortgage Company (McCue) and a mortgage deed to secure payment of the note. The note and mortgage deed, which were guaranteed and/or insured by the FHA, were ultimately assigned to the plaintiff, Wells Fargo Bank, N.A. Under the terms of the note and mortgage deed, the plaintiff was not authorized to accelerate payment of the debt or to initiate foreclosure proceedings unless permitted by HUD regulations. The defendants defaulted on the note and mortgage, and the plaintiff accelerated payment of the debt and commenced a foreclosure action. After a trial, the trial court found that the plaintiff had met its burden proving its case and that the defendants had failed to prove their special defenses of equitable estoppel and unclean hands. Accordingly, the court rendered a judgment of strict foreclosure. The defendants then appealed to the Appellate Court, claiming, among other things, that the trial court's finding that the plaintiff had proved its case was clearly erroneous because compliance with applicable HUD regulations is a condition precedent to acceleration of the debt and the initiation of foreclosure proceedings, and, therefore, the plaintiff was required to prove compliance, which it had not done. The Appellate Court affirmed the judgment of the trial court; *Wells Fargo Bank, N.A.* v. *Lorson*, 183 Conn. App. 200, 224, 192 A.3d 439 (2018); concluding that the burden was on the defendants to plead and prove noncompliance and that, "by failing to assert that special defense, [they] had] waived it." Id., 216. We then granted the defendants' petition for certification on the following issue: "Did the Appellate Court correctly hold that noncompliance with [HUD] regulations is a special defense that the defendant must plead and prove?" *Wells Fargo Bank, N.A.* v. *Lorson*, 330 Conn. 920, 193 A.3d 1214 (2018). We conclude that compliance with applicable

Wells Fargo Bank, N.A. *v.* Lorson

HUD regulations is a condition precedent to enforcement of the note and foreclosure of the mortgage, and must be pleaded and ultimately proved by the mortgagee. Because the trial court did not require the plaintiff to establish compliance with HUD regulations at trial, we further conclude that the case must be remanded to the trial court for a trial on that issue. Accordingly, we reverse the judgment of the Appellate Court affirming the trial court's judgment of strict foreclosure.

The opinion of the Appellate Court sets forth the following facts and procedural history, which we supplement with additional facts as necessary. "The defendants and [McCue] executed a promissory note on December 1, 2008 (note). The note was secured by a mortgage on the defendants' property at 40 McGuire Road in Trumbull (property), in favor of Mortgage Electronic Registration Systems, Inc., as nominee for McCue. The mortgage was recorded on the Trumbull land records on December 1, 2008. The mortgage was assigned to the plaintiff on December 16, 2011, and the assignment was recorded on the Trumbull land records on December 21, 2011. It is undisputed that the plaintiff is the holder of both the note and the mortgage." *Wells Fargo Bank, N.A.* v. *Lorson*, supra, 183 Conn. App. 202.

"The defendants' mortgage was guaranteed and insured by the [FHA and, therefore, was subject to certain] . . . HUD regulations. Section 6 (b) of the note provides in relevant part that, '[i]f [the] [b]orrower defaults by failing to pay in full any monthly payment, then [the] [l]ender may, except as limited by regulations of the [s]ecretary [of HUD] in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. [The] [l]ender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by

Wells Fargo Bank, N.A. *v.* Lorson

the [s]ecretary [of HUD] will limit [the] [l]ender's rights
to require immediate payment in full in the case of
payment defaults. This [n]ote does not authorize accel-
eration when not permitted by HUD regulations.' Sec-
tion 9 (a) of the mortgage deed provides in relevant
part: '[The] [l]ender may, except as limited by regula-
tions issued by the [s]ecretary [of HUD] in the case of
payment defaults, require immediate payment in full of
all sums secured by this [s]ecurity [i]nstrument . . . .' "
(Footnote omitted.) Id., 207–208. Section 9 (d) of the
mortgage deed provides: "In many circumstances regu-
lations issued by the [s]ecretary [of HUD] will limit
[the] [l]ender's rights, in the case of payment defaults,
to require immediate payment in full and foreclose if
not paid. This [s]ecurity [i]nstrument does not authorize
acceleration or foreclosure if not permitted by regula-
tions of the [s]ecretary."

"The plaintiff filed this foreclosure action on October
19, 2011. The complaint alleged that the note and mort-
gage were in default by virtue of nonpayment of the
installments of principal and interest due on November
1, 2010, and each and every month thereafter. The com-
plaint further alleged that the plaintiff is entitled to
collect the debt evidenced by the note and to enforce
the terms of the mortgage, that the plaintiff had elected
to accelerate the balance of the note, and that the plain-
tiff requested a foreclosure of the mortgaged premises."
*Wells Fargo Bank*, *N.A.* v. *Lorson*, supra, 183 Conn.
App. 202.

After failed foreclosure mediation proceedings that
have no bearing on this appeal, "[t]he defendants filed
an answer [to the foreclosure complaint] on July 19,
2013, in which they effectively denied each allegation
and left the plaintiff to its proof. The defendants also
filed two special defenses alleging unclean hands and
equitable estoppel. The plaintiff filed a motion for sum-
mary judgment on November 12, 2013. The defendants

Wells Fargo Bank, N.A. *v.* Lorson

filed an amended answer and special defenses along with their objection to the plaintiff's summary judgment motion on February 19, 2014. In the amended answer, the defendants alleged a third special defense titled 'Mortgage Modification Agreement,' claiming that the plaintiff refused to issue a permanent modification and 'breached the terms of the agreement' by requiring payment of the judgment lien.

"The [trial] court denied the plaintiff's motion for summary judgment on March 21, 2014, ruling that 'the counteraffidavit submitted by the defendants in opposition to the motion raises issues of fact relating to the defendants' special defenses of unclean hands and equitable estoppel to be resolved at trial.' The plaintiff filed a reply to the defendants' special defenses and a certificate of closed pleadings on October 22, 2015." Id., 204–205.

Eight days later, on October 30, 2015, "the defendants moved to amend their answer . . . . In the proposed amended answer, the defendants added a special defense titled 'Breach of Contract,' which alleged the plaintiff's noncompliance with various [HUD] regulations . . . as set forth in 24 C.F.R. § 203.500 et seq. (HUD regulations). The plaintiff filed an objection to the defendants' request to amend on November 9, 2015, and the [trial] court sustained the plaintiff's objection on December 1, 2015, the first day of trial.

"Following a two day bench trial, the court rendered judgment of strict foreclosure in favor of the plaintiff on January 6, 2016. On January 20, 2016, the defendants [appealed to the Appellate Court from the judgment of strict foreclosure]. The defendants filed a motion for articulation on August 4, 2016, requesting an explanation for the judgment of strict foreclosure. On November 25, 2016, the court issued a written response 'to the allegations contained in the defendants' motion [for]

articulation and, specifically, the defendants' misrepresentations and failure to disclose necessary evidence within their knowledge.' In that response, the court stated: '[On the basis of] the factual history of this litigation, it is the finding of this court that the plaintiff has established [its] burden of proof with respect to the allegations of the complaint. The court further finds that the defendants failed to submit sufficient evidence with respect to their burden of proof [as] to the denial of the complaint, as well as the special defenses of unclean hands and equitable estoppel. Accordingly, judgment is [rendered] in favor of the plaintiff with respect to the complaint and special defenses.' The court denied the motion for articulation and stated as follows: 'With respect to the motion for articulation, it is the finding of the court that the motion is based on the misrepresentations and intentional omissions of necessary evidence. The docket sufficiently provides the basis for the rulings by the court. Accordingly, the motion for articulation is denied.' ''[1] Id., 205–206.

On appeal to the Appellate Court, the defendants claimed, among other things, that the trial court's finding that "the plaintiff had sustained its burden of proving that it had satisfied the conditions precedent in the note and mortgage, [i.e., compliance with HUD regulations], was clearly erroneous." The Appellate Court concluded that "the defendants had the affirmative duty to plead the special defense of the plaintiff's noncompliance with the HUD regulations and, by failing to assert that special defense, waived it. Consequently, they may not challenge the plaintiff's compliance on appeal." *Wells Fargo Bank*, *N.A.* v. *Lorson*, supra, 183 Conn. App. 216; see id., 215 ("in this particular context, it makes much

---

[1] Thereafter, the defendants filed a motion for review of the trial court's denial of their motion for articulation with the Appellate Court, which the Appellate Court denied. See *Wells Fargo Bank*, *N.A.* v. *Lorson*, supra, 183 Conn. App. 206.

Wells Fargo Bank, N.A. *v.* Lorson

more sense to require the defendant to plead the specific requirements that have not been met and [to] bear the burden of proving the plaintiff's noncompliance with those requirements''). The Appellate Court further concluded that, even if the plaintiff had the burden of pleading and proving compliance, because there was evidence in the record to support the conclusion that the plaintiff had complied, and no evidence to the contrary, the trial court's ruling that the plaintiff had satisfied its prima facie case was not clearly erroneous. Id., 217 n.10. After also rejecting the defendants' other claims on appeal, the Appellate Court affirmed the judgment of the trial court. Id., 224.

This certified appeal followed.[2] The defendants contend that the Appellate Court incorrectly determined that the burden was on them to plead and prove noncompliance with applicable HUD regulations because compliance with those regulations is a condition precedent to accelerating payment of the debt and foreclosing on a mortgage. See, e.g., *Wells Fargo Bank*, *N.A.* v. *Strong*, 149 Conn. App. 384, 392, 89 A.3d 392 (''the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied'' (internal quotation marks omitted)), cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014). In addition, the defendants contend that the Appellate Court incorrectly determined that, even if the plaintiff had the burden of proving compliance, the evidence established that it had done so. The plaintiff contends that, to the contrary, compliance with applicable HUD regulations is not a condition precedent to accelerating the debt and bringing a foreclosure

_____

[2] After the defendants filed this appeal, we granted permission to the Housing Clinic of the Jerome N. Frank Legal Services Organization to file an amicus curiae brief in support of the defendants' position.

Wells Fargo Bank, N.A. *v.* Lorson

action but, instead, is a condition subsequent. Accordingly, it contends, the Appellate Court correctly held that the burden was on the defendants to plead and prove noncompliance as a special defense. The plaintiff further contends that, even if compliance with HUD regulations is a condition precedent, policy concerns mandate that the burden should be on the defendants to plead and prove noncompliance. Finally, the plaintiff contends that, even if it had the burden of proving compliance, the Appellate Court correctly determined that it had done so.

We conclude that compliance with applicable HUD regulations is a condition precedent to accelerating the debt and foreclosing a mortgage that is guaranteed or insured by the FHA. We further conclude that, in this context, it is appropriate to adopt a burden shifting procedure pursuant to which the plaintiff has the burden of pleading its compliance with the applicable regulations. If they deny the plaintiff's allegation relating to that compliance, the defendants have the burden of pleading that the plaintiff has not complied with specific regulations that are applicable. In that event, the burden would then shift back to the plaintiff to prove compliance with the specific regulations alleged by the defendants. Finally, we conclude that, because the trial court did not apply this procedure, the case must be remanded to that court for a new trial limited to this issue.

We note, preliminarily, that the defendants' claim that the burden was on the plaintiff to prove compliance with applicable HUD regulations is unpreserved because they did not raise it before the trial court. Accordingly, the claim ordinarily would be unreviewable. See Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial"). Nevertheless, because the plaintiff did not raise this preservation issue before the Appellate Court and has not raised it before this court, we will

Wells Fargo Bank, N.A. *v.* Lorson

review the claim here. See *Mueller* v. *Tepler*, 312 Conn. 631, 643–44, 95 A.3d 1011 (2014) (when plaintiff didnot argue before Appellate Court that defendants'claim was unpreserved, this court would considerissue in certified appeal, and defendants' claim was reviewable).[3]

We begin our analysis with the defendants' threshold claim that the provisions of the mortgage stating that it "does not authorize acceleration or foreclosure if not permitted by regulations of the [s]ecretary [of HUD]" and of the note stating that it "does not authorize acceleration when not permitted by HUD regulations" (compliance provisions) created a contractual condition precedent to debt acceleration and foreclosure by the plaintiff. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. . . . Whether a provision in a contract is a condition the [nonfulfillment] of which excuses performance depends [on] the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." (Internal quotation marks omitted.) *Blitz* v. *Subklew*, 74 Conn. App. 183, 189, 810 A.2d 841 (2002), quoting *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951).

---

[3] We acknowledge that the plaintiff claimed before the Appellate Court that the defendants "waived the argument [that the plaintiff bore the initial burden of proving that it complied with HUD regulations] by failing to plead *non*compliance with the HUD regulations as a special defense." (Emphasis in original.) But this argument is directed at an alleged pleading defect; the plaintiff does not claim that the defendants failed to preserve the HUD compliance issue. Indeed, the Appellate Court reached and decided the legal issue of whether the plaintiff had the burden of proving compliance with HUD regulations with no objection from the plaintiff, and now the plaintiff urges us to uphold that decision in this certified appeal.

One of the relevant circumstances to consider in our condition precedent analysis is the public policy that the compliance provisions of the note and mortgage were intended to advance. See, e.g., *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, 937 N.E.2d 853, 864 (Ind. App. 2010) (court considered "precedents, the language of the HUD regulations, and the public policy of HUD" in determining whether compliance provisions created condition precedent). Accordingly, we look to the public policy underlying FHA guaranteed loans for guidance. "The FHA, which was created by the National Housing Act of 1934, is the largest government insurer of mortgages in the world. . . . The FHA, which is a part of HUD, provides mortgage insurance on single-family, multifamily, manufactured homes, and hospital loans made by FHA-approved lenders throughout the United States and its territories. . . . Under this program, mortgagee/lenders are induced to make essentially risk-free mortgages by being guaranteed against loss in the event of default by the mortgagor. . . . This program allows mortgagees to offer loans to [low income] families at a more favorable rate than would otherwise be available in the market. . . . The availability of affordable mortgages, in turn, promotes [Congress'] national goal of a decent home and suitable living environment for every American family." (Citations omitted; internal quotation marks omitted.) Id., 860.

"Because these government-insured mortgage loan programs recognize that [their] mortgagors will often have difficulty making full and timely payments, HUD promulgated very specific regulations outlining the mortgage servicing responsibilities of mortgagees, which include notice requirements that are integral to the program. . . . These notice requirements [e]nsure that financially strapped homeowners will have every oppor-

Wells Fargo Bank, N.A. *v.* Lorson

tunity to take informed steps to retain their homes.'' (Citation omitted; footnote omitted.) *HSBC Bank USA, N.A.* v. *Teed*, 48 Misc. 3d 194, 196, 4 N.Y.S.3d 826 (2014).

The court in *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, supra, 937 N.E.2d 853, explained the underlying considerations of public policy: ''Families who receive HUD-insured mortgages do not meet the standards required for conventional mortgages. It would be senseless to create a program to aid families for whom homeownership would otherwise be impossible without promulgating mandatory regulations for HUD-approved mortgagees to [e]nsure that objectives of the HUD program are met. Foreseeable obstacles to these families' maintaining regular payments, such as temporary illness, unemployment or poor financial management, should be handled with a combination of understanding and efficiency by mortgagees or servicers. Poor servicing techniques such as computerized form letters and unrealistic forbearance agreements . . . defeat the purpose of the National Housing Act and the HUD program. The prevention of foreclosure in HUD mortgages [whenever] possible is essential. The HUD program's objectives cannot be attained if HUD's involvement begins and ends with the purchase of the home and the receipt of a mortgage by a [low income] family.'' (Internal quotation marks omitted.) Id., 863.

''The regulations regarding a mortgagee's servicing responsibilities of such mortgages are codified in [t]itle 24, [p]art 203 (Single Family Mortgage Insurance), [s]ubpart C (Servicing Responsibilities) [subpart C] of the Code of Federal Regulations . . . 24 C.F.R. §§ [203.500 through 203.681]. Subpart C contains mortgagee servicing responsibilities and also provides certain relief for the mortgagor, e.g., conditions of special forbearance, 24 C.F.R. § 203.614, mortgage modification, 24 C.F.R. § 203.616, and a requirement that [c]ollec-

Wells Fargo Bank, N.A. *v.* Lorson

tion techniques must be adapted to individual differences in mortgagors and take account of the circumstances peculiar to each mortgagor, 24 C.F.R. § 203.600.'' (Internal quotation marks omitted.) *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, supra, 937 N.E.2d 860. Significantly, title 24 of the 2011 edition of the Code of Federal Regulations, § 203.500, provides in relevant part: ''It is the intent of [HUD] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of [subpart C] have been followed.''

The purpose of the HUD regulations is not only to help ensure that homeowners will have every opportunity to retain their homes, but also to ensure that lenders will take all ''appropriate actions which can reasonably be expected to generate the smallest financial loss to [HUD].'' 24 C.F.R. § 203.501 (2011). To ensure uniform advancement of these goals, it is the policy of HUD that lenders participating in the program must use the mortgage and note forms that HUD promulgates, which contain the compliance provisions. See Requirements for Single Family Mortgage Instruments, 54 Fed. Reg. 27,596, 27,601 (June 29, 1989) (''[m]ortgagees must use the model form [for mortgage provisions], Exhibit A, and the footnotes accompanying the model form, with only such adaptation as may be necessary to conform to state or local requirements''); id. (''[m]ortgagees must use the model form [for note provisions], Exhibit B, and the footnotes accompanying the form, with only such adaptation as may be necessary to conform to state or local requirements''); see also id., 27,603–608 (model mortgage form); id., 27,609–10 (model note form).

With this background in mind, we conclude that the compliance provisions of the note and mortgage clearly were intended to constrain the ability of lenders to accelerate the debt payment or to foreclose without *first* providing the homeowners with ''every opportu-

nity to take informed steps to retain their homes,'' as provided in the regulations. *HSBC Bank USA, N.A.* v. *Teed*, supra, 48 Misc. 3d 196. It follows that the compliance provisions are conditions precedent to accelerating the debt and initiating foreclosure proceedings such that, ''[i]f the condition[s] [are] not fulfilled, the right to enforce the contract does not come into existence.'' (Internal quotation marks omitted.) *Blitz* v. *Subklew*, supra, 74 Conn. App. 189. This conclusion is bolstered by the language of the Code of Federal Regulations providing that ''[i]t is the intent of [HUD] that no mortgagee shall *commence* foreclosure or acquire title to a property until the requirements of [subpart C] have been followed.'' (Emphasis added.) 24 C.F.R. § 203.500 (2011); see 24 C.F.R. § 203.606 (a) (2011) (''[*b*]*efore* initiating foreclosure, the mortgagee must ensure that all servicing requirements of [subpart C] have been met'' (emphasis added)). Numerous other courts have reached the same conclusion. See, e.g., *Bates* v. *JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1132 (11th Cir. 2014) (under Georgia law, compliance provision of FHA insured mortgage ''clearly makes compliance with HUD regulations a condition precedent to the bank's right to accelerate the debt or exercise the power of sale''); *Pfeifer* v. *Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1279, 150 Cal. Rptr. 3d 673 (2012) (agreeing with court that held that compliance provision of FHA insured mortgage was condition precedent); *Palma* v. *JPMorgan Chase Bank, National Assn.*, 208 So. 3d 771, 775 (Fla. App. 2016) (like notice provision of standard mortgage, compliance provisions of FHA insured mortgage are conditions precedent to right to accelerate debt payment and to foreclose); *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, supra, 937 N.E.2d 864 (''HUD servicing responsibilities . . . are binding conditions precedent that must be complied with before a mortgagee has the right to foreclose on a HUD prop-

Wells Fargo Bank, N.A. *v.* Lorson

erty''); *Wells Fargo Bank, N.A.* v. *Cook*, 87 Mass. App. 382, 386, 31 N.E.3d 1125 (''compliance with the [HUD] regulations has been held to be a condition precedent to foreclosure of FHA-insured mortgages''), review denied, 472 Mass. 1107, 36 N.E.3d 31 (2015); *Wells Fargo Bank, N.A.* v. *Awadallah*, 41 N.E.3d 481, 487 (Ohio App. 2015) (''[when] compliance with HUD regulations is required by a note and mortgage, such compliance is a condition precedent to bringing a foreclosure action''); *Mathews* v. *PHH Mortgage Corp.*, 283 Va. 723, 736, 724 S.E.2d 196 (2012) (HUD regulation is ''a condition precedent to the accrual of the rights of acceleration and foreclosure'').

The plaintiff contends that the compliance provisions are not conditions precedent but conditions subsequent and, therefore, that the defendants were required to raise noncompliance with HUD regulations as a special defense. Unlike a condition precedent, which ''is a fact or event [that] the parties intend must exist or take place before there is a right to performance''; (internal quotation marks omitted) *Blitz* v. *Subklew*, supra, 74 Conn. App. 189; nonperformance of a condition subsequent operates to cut off an existing right. See, e.g., *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 530, 294 A.2d 633 (1972) (''[t]his limitation is to be regarded as creating a condition subsequent, by which an existing right is cut off by the nonperformance of the condition, rather than a condition precedent to a continuing right'' (internal quotation marks omitted)). A classic example of a condition subsequent is compliance with the applicable statute of limitations. See, e.g., *Bulkley* v. *Norwich & Westerly Railway Co.*, 81 Conn. 284, 287, 70 A. 1021 (1908) (comparing statutory notice provision that ''ma[de] the giving of a prescribed notice a condition precedent to the existence of [the right of action] under any and all circumstances'' with statutory notice provision that ''simply place[d] a limitation, anal-

Wells Fargo Bank, N.A. *v.* Lorson

ogous to the general statute of limitations, [on] the right
of an injured party to prosecute such an action,'' which
constituted condition subsequent).[4] This is because,
when a person fails to comply with an applicable statute
of limitations, the right to recover that had existed from

---

[4] See also, e.g., *Fields* v. *Housing Authority*, 63 Conn. App. 617, 621, 777
A.2d 752 (when compliance with statutory notice provision is not essential
to determination of liability but concerns only whether plaintiff has taken
proper steps to warrant recovery, provision operates as condition subse-
quent to liability rather than condition precedent, but statutory notice provi-
sion is condition precedent when statute containing provision creates new
cause of action unrecognized by common law), cert. denied, 257 Conn. 910,
782 A.2d 133 (2001). It seems to us that there is a difference between an
ordinary statute of limitations and a statutory notice provision, in that a
person need not take any action—other than to assert the right at issue—
before the statute of limitations has expired to preserve the right to recover,
whereas the *failure* to comply with a statutory notice provision bars the
right to recover even before the time for filing the notice has expired.
Ordinarily, if the right to performance does not exist *until* an act takes
place, the act is considered a condition precedent. Indeed, *contractual* notice
provisions are considered conditions precedent to performance. See, e.g.,
*Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 710, 807 A.2d 968 ("when
the terms of the note and mortgage require notice of default, proper notice
is a condition precedent to an action for foreclosure" (internal quotation
marks omitted)), cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002). Moreover,
it is difficult to understand why the distinction between common-law causes
of action and purely statutory causes of action should have any bearing
on whether a notice provision is properly characterized as a condition
subsequent or a condition precedent, as those terms are ordinarily under-
stood. To say that a notice provision is not of the essence and that compliance
with it may be waived may mean that the provision is not, strictly speaking,
a condition precedent, but it is difficult to understand why it should mean
that the provision is a condition subsequent. We recognize, however, that
there are historical reasons for sometimes treating statutory notice provi-
sions like conditions subsequent, even though they do not fit neatly into
that category. Accordingly, to the extent that the plaintiff in the present case
relies on the cases treating some statutory notice provisions as conditions
subsequent to support its contention that ongoing noncompliance with HUD
regulations would constitute nonperformance of a condition subsequent,
we conclude that its reliance is misplaced. Indeed, it is arguable that, outside
the law of contracts, the concepts of conditions precedent and conditions
subsequent no longer serve a particularly useful purpose and that the ques-
tion of whether compliance with a particular statutory notice provision is
an element of the plaintiff's case or, instead, must be pleaded and proved
by the defendant, and whether compliance is a prerequisite to the court's

Wells Fargo Bank, N.A. *v.* Lorson

the time that the cause of action accrued is thereby *lost*. In contrast, when a person fails to comply with a condition precedent to initiating a cause of action, the right to recover never comes into existence. "A defense predicated on a condition subsequent, and limitations generally, need not be anticipated and negatived by the plaintiff. They may properly be left to be pleaded by the defendant." *Karp* v. *Urban Redevelopment Commission*, supra, 531–32.

In the present case, the plaintiff contends that compliance with applicable HUD regulations requiring lenders to give defaulting homeowners every opportunity to retain their homes before accelerating the debt or initiating foreclosure proceedings is a condition subsequent because a lender's rights to accelerate and foreclose "come into existence when the borrower defaults on the loan," and the regulations merely act as a limitation on or exception to those preexisting rights. The plaintiff points to the language in § 6 (b) of the note providing that the "[l]ender may, *except as limited by regulations of the* [*s*]*ecretary* in the case of payment defaults, require immediate payment in full," and "[t]his [n]ote does not authorize acceleration *when not permitted by HUD regulations*." (Emphasis added.) Similarly, § 9 (a) of the mortgage provides in relevant part that the "[l]ender may, *except as limited by regulations issued by the* [*s*]*ecretary* in the case of payment defaults, require immediate payment in full . . . ." (Emphasis added.) Section 9 (d) of the mortgage further provides: "In many circumstances regulations issued by the [s]ecretary *will limit* [*the*] [*l*]*ender's rights*, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This [s]ecurity [i]nstrument does not authorize acceleration or foreclosure *if not permitted by regulations* of the [s]ecretary."

subject matter jurisdiction or, instead, is merely a prerequisite to recovery, should be resolved solely on policy grounds.

Wells Fargo Bank, N.A. *v.* Lorson

(Emphasis added.) According to the plaintiff, "[t]his language expressly presupposes that the lender already has existing 'rights' to accelerate and foreclose and imposes certain limitations on those rights."

We disagree with this analysis. The distinction between conditions precedent and conditions subsequent is not that conditions subsequent *limit* or *restrict* rights whereas conditions precedent do not. Rather, they both limit and restrict rights but in different ways. Specifically, the nonoccurrence of a condition precedent limits a right by preventing it from coming into existence; see, e.g., *Blitz* v. *Subklew*, supra, 74 Conn. App. 189 ("A condition [precedent] . . . is merely a *limiting or modifying* factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. (Emphasis added; internal quotation marks omitted.)); whereas the nonoccurrence of a condition subsequent limits the right by extinguishing it. See, e.g., *Karp* v. *Urban Redevelopment Commission*, supra, 162 Conn. 530 ("[t]his *limitation* is to be regarded as creating a condition subsequent, by which an existing right is cut off by the nonperformance of the condition" (emphasis added; internal quotation marks omitted)).

Accordingly, contrary to the plaintiff's contention, the fact that the loan instruments use words of limitation does not expressly presuppose that the right was in existence before the condition—compliance with applicable HUD regulations—failed to occur. Indeed, unlike a statute of limitations, noncompliance with which occurs on a specific date, *after* which the right to recover, which had existed for a defined period up to that time, is "cut off," it is difficult to conceive how the ongoing failure to comply with HUD regulations could "cut off" any right because there simply is no identifiable date on which the failure occurred and no defined temporal period preceding the failure to comply during which the right could have been asserted in the

Wells Fargo Bank, N.A. *v.* Lorson

first place. Contrary to the plaintiff's claim, the right to accelerate payments and to foreclose did not come into existence when the defendants defaulted on the note and mortgage because that right was *conditioned* on the plaintiff's compliance with applicable HUD regulations. Indeed, the plaintiff has not cited a single case in which a court has concluded that the compliance provisions of an FHA note and mortgage are conditions subsequent. Accordingly, we reject the plaintiff's claim that the compliance provisions are not conditions precedent.

Ordinarily, compliance with conditions precedent to foreclosing on a mortgage must be pleaded and proved by the lender. See, e.g., *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013) ("[i]n order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence . . . that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied"); cf. *Young* v. *American Fidelity Ins. Co.*, 2 Conn. App. 282, 285, 479 A.2d 244 (1984) ("one instituting an action [on] an insurance policy is . . . obliged to allege in his complaint . . . that the various conditions precedent stated in the policy have been fulfilled" (internal quotation marks omitted)). The plaintiff contends, for a variety of reasons, however, that, even if the compliance provisions are conditions precedent, for purposes of FHA insured mortgages, the burden should be on the homeowner to plead and prove noncompliance with the provisions as a special defense.

First, the plaintiff contends that HUD has interpreted the compliance provisions as requiring homeowners to raise noncompliance with HUD regulations as a special defense. See Requirements for Single Family Mortgage Instruments, supra, 54 Fed. Reg. 27,599 ("we believe that a borrower could appropriately raise [a violation of 24 C.F.R. § 203.606, prohibiting foreclosure unless three full monthly payments due on the mortgage are

Wells Fargo Bank, N.A. *v.* Lorson

unpaid] in his or her defense''). The plaintiff contends that this interpretation is binding on all courts because, ''[w]hen dealing with uniform contract language imposed by the United States, it is the meaning of the United States that controls. In interpreting such a government mandated term, a court's assessment of context and purpose is informed by the traditional tools of legislative and regulatory construction. This is a matter of law to be determined by a court. When the United States mandates that private parties use uniform language for a certain type of contract, the United States is enacting a policy that all parties to that type of contract should be subject to identical obligations. Those obligations are the ones the United States intended them to be, as determined by a court, regardless of the personal interpretation offered by a party. If such contracts were subjected to different meanings depending merely on whether a particular party's interpretation was plausible, it would not only undermine the efficiency benefits of standardization, but it would also undermine the federal policy that motivated the United States to impose uniform contractual obligations on parties in the first place.'' (Footnote omitted.) *Kolbe* v. *BAC Home Loans Servicing, L.P.*, 738 F.3d 432, 442 (1st Cir. 2013).

We are not persuaded that this policy statement by HUD requires the states to treat noncompliance with applicable HUD regulations as a special defense to a foreclosure action to be pleaded and proved by the homeowner. As the amicus points out, the statement that a homeowner could raise noncompliance with applicable regulations ''in his or her defense''; Requirements for Single Family Mortgage Instruments, supra, 54 Fed. Reg. 27,599; reasonably can be interpreted as meaning merely that noncompliance could prevent the lender from prevailing in the foreclosure action, not as mandating any particular mode of procedure for raising the issue. There is no reason to believe that HUD has

any deep familiarity with local pleading procedures and practices in the various states and intended, for some reason, to prohibit states from requiring lenders to plead and prove compliance, even though the compliance provisions were intended to be conditions precedent. Rather, it is reasonable to conclude that HUD was simply rejecting the proposition that a lender's duty of compliance runs *only* to HUD, not to homeowners as well. In this regard, it is significant that HUD made this statement in response to a person who had commented on the proposed uniform mortgage form and who was concerned that the mandated compliance provisions "would create foreclosure proceedings that would be more [time-consuming] and expensive." Id. HUD responded that, "[a]s long as [mandatory requirements remain] in the regulations, we do not expect mortgagees to violate [them] even though the mortgage fails to repeat the requirement, and we believe that a borrower could appropriately raise the regulatory violation in his or her defense." Id. It bears noting that HUD followed up this statement by stating that it "retains the general position recited in 24 C.F.R. § 203.500, that whether a mortgagee's refusal or failure to comply with servicing regulations is a legal defense is a matter to be determined by the courts." Id. At the time HUD made this statement in June, 1989, § 203.500 contained the following sentence: "[HUD] takes no position on whether a mortgagee's refusal or failure to comply with §§ 203.640 through 203.658 is a legal defense to foreclosure; that is a matter to be determined by the courts." 24 C.F.R. § 203.500 (1989); see Temporary Mortgage Assistance Payments, 52 Fed. Reg. 6908, 6915 (March 5, 1987) (to be codified at 24 C.F.R. pts. 203 and 204). Accordingly, courts that hold that noncompliance with HUD regulations bars relief to a foreclosing lender abide by this "interpretation" of the compliance provisions, regardless of whether they treat compliance as an element of a fore-

Wells Fargo Bank, N.A. *v.* Lorson

closure action that must be pleaded and proved by the lender or treat noncompliance as a defense to be pleaded and proved by the homeowner.

Second, the plaintiff contends that "[e]very jurisdiction to have considered the issue . . . has followed HUD's interpretation and found that borrowers may raise certain instances of HUD noncompliance to defend against foreclosures. By contrast, no jurisdiction has burdened a lender with proving compliance with all HUD regulations as part of its prima facie case."

Again, we are not persuaded. Although a number of jurisdictions have concluded that noncompliance with HUD regulations should be raised by the homeowner as an affirmative defense,[5] many of the cases cited by the plaintiff merely hold that noncompliance with applicable HUD regulations can be raised as a "defense" to a foreclosure action in the generic or colloquial sense that, if established (or not disproved), noncompliance will bar relief to the lender, and do not analyze who has the burden of pleading and proof. See, e.g., *PNC*

_____

[5] See, e.g., *Bankers Life Co.* v. *Denton*, 120 Ill. App. 3d 576, 579, 458 N.E.2d 203 (1983) ("we believe that the failure to comply with these servicing regulations which are mandatory and have the force and effect of law can be raised in a foreclosure proceeding as an affirmative defense"); *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, supra, 937 N.E.2d 864 (holding, without analysis regarding who has burden of proof, that homeowner "can properly raise as an affirmative defense that [the lender] failed to comply with the HUD servicing regulations prior to commencing this foreclosure action"); *Wells Fargo Home Mortgage, Inc.* v. *Neal*, 398 Md. 705, 727, 922 A.2d 538 (2007) ("we are of the opinion that the violations of the HUD mortgage servicing regulations alleged of [the lender] by [the homeowner] may be asserted effectively as an affirmative defense within the injunctive relief apparatus provided" by Maryland statute). We note that the issue in both *Bankers Life Co.* and *Lacy-McKinney* was whether homeowners were intended to be beneficiaries of the applicable HUD regulations *at all* or, instead, whether HUD was the sole beneficiary. See *Bankers Life Co.* v. *Denton*, supra, 579; *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, supra, 864. There was no analysis as to whether noncompliance must be pleaded by the homeowner or, instead, compliance must be pleaded by the lender.

*Bank, National Assn.* v. *Wilson*, 74 N.E.3d 100, 105 (Ill. App.) ("it is undisputed . . . that the failure to comply with HUD's mortgage services requirements contained in its regulations is a defense to a mortgage foreclosure action"), appeal denied, 89 N.E.3d 763 (Ill. 2017); *ABN AMRO Mortgage Group, Inc.* v. *Tullar*, Docket No. 06-0824, 2009 WL 1066511, *4 (Iowa App. April 22, 2009) (decision without published opinion, 770 N.W.2d 851) ("HUD foresaw—and approved—the concept that failure to comply with its so-called 'mitigation' or 'forbearance' rules could be raised as a defense in a foreclosure proceeding"); *HSBC Bank USA, N.A.* v. *Teed,* supra, 48 Misc. 3d 197 ("compliance with the appropriate federal regulations is not merely a procedural requirement but is a condition precedent to the imposition of liability," and, therefore, "the failure to comply with the HUD servicing requirements is a complete defense to a mortgage foreclosure action"); *Federal Land Bank of Saint Paul* v. *Overboe*, 404 N.W.2d 445, 449 (N.D. 1987) ("various courts have held that the failure of a lender to follow HUD regulations governing mortgage servicing constitutes a valid defense sufficient to deny the lender the relief it seeks in a foreclosure action"); *Fleet Real Estate Funding Corp.* v. *Smith*, 366 Pa. Super. 116, 124, 530 A.2d 919 (1987) ("a mortgagor of an FHA-insured mortgage may raise as an equitable defense to foreclosure . . . the mortgagee's deviation from compliance with the forbearance provisions of the HUD Handbook and regulations").

More important, contrary to the plaintiff's contention that *no* court has *ever* placed the burden of pleading and proving compliance with HUD regulations on the lender, the defendants have cited two cases in which a state's appellate court expressly did so. In *Palma* v. *JPMorgan Chase Bank, National Assn.*, supra, 208 So. 3d 771, the court held that compliance with HUD regulations, like other conditions precedent to initiating a

foreclosure action, must be generally pleaded by the lender. See id., 775. The burden then shifts to the borrower to specifically deny compliance with particular regulations. Id. In turn, once the borrower has pleaded a specific denial, the burden shifts back to the lender to prove at trial that it complied with the regulations. Id. Similarly, in *Wells Fargo Bank, N.A.* v. *Awadallah*, supra, 41 N.E.3d 481, the court held that "compliance with [HUD] regulations is a condition precedent and [the] bank must [therefore] generally plead in its complaint that it has complied with the . . . regulations, which shifts the burden to the borrower to plead with particularity in the answer . . . which specific regulations were not complied with, in order to preserve the issue. Then upon summary judgment, the burden shifts back again to the bank, which must provide evidence sufficient to dispel a genuine issue of material fact, that it complied with the specific HUD regulation raised by the borrower in its answer." (Internal quotation marks omitted.) Id., 487. Accordingly, we reject the plaintiff's contention that the great weight of authority favors its position that the burden should be on the defendants to plead and prove noncompliance.

Third, the plaintiff contends that the Appellate Court correctly determined that "[r]equiring mortgagees to plead and prove compliance with all HUD regulations would undermine this state's policy of promoting economy and efficiency in foreclosure actions . . . ." See *Wells Fargo Bank, N.A.* v. *Lorson*, supra, 183 Conn. App. 215 (if lenders had burden of pleading and proving compliance, "[f]oreclosure trials, and motions for summary judgment in foreclosure actions, in which the facts are largely undisputed, would become drawn out, expensive affairs as a plaintiff presents evidence regarding a lengthy list of requirements"). The plaintiff points out that foreclosure trials are entitled to priority by statute; see General Statutes § 52-192; see also, e.g.,

Wells Fargo Bank, N.A. *v.* Lorson

*Suffield Bank* v. *Berman*, 25 Conn. App. 369, 373, 594 A.2d 493 ("due to the nature of foreclosure actions, the spirit of the rules is to expedite matters"), cert. dismissed, 220 Conn. 913, 597 A.2d 339 (1991), and cert. denied, 220 Conn. 914, 597 A.2d 340 (1991); and contends that, because the HUD regulations are so voluminous and Byzantine, the position taken by the defendants and the amicus "would saddle mortgagees with a massive and complex burden that would greatly complicate, lengthen, and add expense to foreclosures . . . of mortgages containing the HUD uniform covenants."

As the plaintiff recognizes, however, this court has held in another context that, "in the very exceptional situation created by the [existence of a contract containing] numerous conditions [precedent]," a burden shifting approach is appropriate, with the plaintiff retaining the ultimate burden of proving compliance. *Harty* v. *Eagle Indemnity Co.*, 108 Conn. 563, 566, 143 A. 847 (1928). Specifically, "it has become the established law of this [s]tate that one instituting an action [on] an insurance policy is only obliged to allege in his complaint, in general terms, that the various conditions precedent stated in the policy have been fulfilled; that it is then incumbent [on] the defendant, by way of special defense,[6] to set up such failures to comply with such conditions as it proposes to claim; that the burden rests [on] the plaintiff to prove compliance with the conditions so put in issue, but that, as to other conditions precedent, compliance is presumed, without offer of proof by the plaintiff." (Footnote added.) Id., 565. The "underlying reason for the rule . . . [is] that, in the

---

[6] We note that this pleading is a special defense in form only, inasmuch as the defendant ordinarily has the ultimate burden of proving a special defense. See, e.g., *Wyatt Energy, Inc.* v. *Motiva Enterprises, LLC*, 308 Conn. 719, 736, 66 A.3d 848 (2013) ("the party raising a special defense has the burden of proving the facts alleged therein"). As a practical matter, this pleading functions as a specific denial of the plaintiff's general pleading of compliance.

Wells Fargo Bank, N.A. *v.* Lorson

interest of economy of time and effort and of simplicity of procedure, the plaintiff should be relieved of the necessity of pleading and proving facts which the defendant never proposes to put in actual issue.'' Id.

There are two additional reasons that placing the ultimate burden of proof on the plaintiff makes sense in the present context. First, ''the task of proving a negative [i.e., *non*compliance with HUD regulations] is an inherently difficult one, and it may be further complicated by the opposing party's interest in concealment.'' *Arrowood Indemnity Co.* v. *King*, 304 Conn. 179, 203, 39 A.3d 712 (2012). Second, mortgagees possess their own records and are in the best position to know what specific steps they have taken to comply with specific HUD regulations that control their actions or, if they have taken no such steps, to explain why they believed that doing so was unnecessary under the circumstances. Cf. id. (''[i]mposing this difficult task [of proving lack of prejudice from failure to comply with a notice provision] on the insured—the party least well equipped to know, let alone demonstrate, the effect of delayed disclosure on the investigatory and legal defense capabilities of the insurer—reduces the likelihood that the fact finder will possess sufficient information to determine whether prejudice has resulted from delayed disclosure'').

The Appellate Court nevertheless concluded that, pursuant to Practice Book § 10-50,[7] the defendants had

---

[7] Practice Book § 10-50 provides: ''No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though nonpayment is alleged by the plaintiff), release, the statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be the plaintiff's own.''

Wells Fargo Bank, N.A. *v.* Lorson

the affirmative duty to plead the plaintiff's noncompliance with HUD regulations as a special defense. See *Wells Fargo Bank*, *N.A.* v. *Lorson*, supra, 183 Conn. App. 213–14. The Appellate Court reasoned, "[t]here are potentially dozens of HUD requirements that a defendant could argue are necessary prerequisites to the bringing of a foreclosure action. . . . It is inconsistent with our expectation that trials are not supposed to be a game of blindman's bluff to expect a plaintiff in a foreclosure action to anticipate which HUD requirement a defendant will seize upon to argue after the plaintiff rests that it has failed to prove its case. . . . Consequently, in this particular context, it makes much more sense to require the defendant to plead the specific requirements that have not been met and bear the burden of proving the plaintiff's noncompliance with those requirements." Id., 215. We disagree that a lender's noncompliance with HUD regulations is most appropriately pleaded by the borrower as a special defense and conclude that, because compliance with the various HUD regulations is a condition precedent, compliance must be generally pleaded by the lender.

As we explained, "[a] condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . *If the condition is not fulfilled, the right to enforce the contract does not come into existence.* . . . Whether a provision in a contract is a condition the [nonfulfillment] of which excuses performance depends [on] the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all

Although Practice Book § 10-50 was amended in 2017, the amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current version of that rule.

the surrounding circumstances when they executed the contract.'' (Emphasis added; internal quotation marks omitted.) *Blitz* v. *Subklew*, supra, 74 Conn. App. 189, quoting *Lach* v. *Cahill*, supra, 138 Conn. 421. For the reasons we have explained, language in the mortgage and note makes clear that compliance with HUD regulations is a condition precedent to debt acceleration and foreclosure by the plaintiff. Specifically, the mortgage provides that it ''does not authorize acceleration or foreclosure if not permitted by regulations of the [s]ecretary [of HUD].'' The note similarly provides that it ''does not authorize acceleration when not permitted by HUD regulations.'' Our conclusion that compliance with HUD regulations is a condition precedent is supported by the policy of those regulations. ''It is the intent of [HUD] that no mortgagee commence foreclosure or acquisition of the property until the requirements of [§§ 203.650 through 203.662 of the HUD regulations] or instructions issued pursuant to said sections have been complied with.'' Mortgage Servicing Generally, 45 Fed. Reg. 29,573, 29,574 (May 5, 1980) (to be codified at 24 C.F.R. pt. 203); see Temporary Mortgage Assistance Payments, supra, 52 Fed. Reg. 6915 (''[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of [subpart C] have been met''). This is because ''[t]he prevention of foreclosure in HUD mortgages [whenever] possible is essential. The HUD program's objectives cannot be attained if HUD's involvement begins and ends with the purchase of the home and the receipt of a mortgage by a [low income] family.'' (Internal quotation marks omitted.) *Lacy-McKinney* v. *Taylor, Bean & Whitaker Mortgage Corp.*, supra, 937 N.E.2d 863; see 24 C.F.R. § 203.501 (2011) (purpose of HUD regulations is not only to help ensure that homeowners will have every opportunity to retain their homes, but also to ensure that lenders will take all ''appropriate actions which can reasonably be

expected to generate the smallest financial loss to [HUD]''). It is clear that HUD intended that, like a quintessential condition precedent, the right to enforce the note and to foreclose on the mortgage would not come into existence unless the various HUD regulations, designed to avoid foreclosure in the first place, had been complied with. Indeed, unlike with a special defense, notwithstanding a lender's noncompliance with HUD regulations, the lender still has a cause of action; it simply does not have the right to enforce the terms of the mortgage and note until it complies with the regulations.

Given our conclusion that compliance with the HUD regulations is a condition precedent, a lender must necessarily plead compliance. See, e.g., *GMAC Mortgage, LLC* v. *Ford*, supra, 144 Conn. App. 176 (''[i]n order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence . . . that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied''). The policy underlying the HUD regulations—prevention of foreclosures—would be undermined if a lender were not required to plead compliance with the regulations and, instead, a borrower had to raise noncompliance as a special defense.

Moreover, in many circumstances, a borrower would have no way of knowing whether a lender failed to comply with specific HUD regulations until he has access to discovery.[8] Although a borrower may be

---

[8] It is also for this reason that we decline to adopt the burden shifting procedure this court has employed in the insurance context. See, e.g., *Harty* v. *Eagle Indemnity Co.*, supra, 108 Conn. 565. The rationale underlying the burden shifting procedure in the insurance context—''that, in the interest of economy of time and effort and of simplicity of procedure, the plaintiff should be relieved of the necessity of pleading and proving facts which the defendant never proposes to put in actual issue''—is different from the rationale in the foreclosure context. Id. Unlike an insurance company that likely has reason to know that an insured did not comply with the terms of an insurance policy and, therefore, pleads noncompliance as a special

Wells Fargo Bank, N.A. *v.* Lorson

aware of the various payment plans a lender offered him pursuant to HUD regulations, he would not know whether the lender complied with other requirements under the HUD regulations; see 24 C.F.R. § 203.500 et seq.; such as the requirement that the lender must evaluate various loss mitigation techniques. See 24 C.F.R. §§ 203.501 and 203.605. As the amicus curiae contends, "lenders are the *only* party equipped to assure trial courts of compliance." (Emphasis added.) Lenders and servicers possess their own records and are in the best position to know whether they have complied with the HUD regulations that control their actions.

In addition to the lack of a good faith basis to make such an allegation, a defendant could not allege noncompliance with HUD regulations generally as a special defense. Practice Book § 10-50 requires that "[f]acts which are consistent with [the plaintiff's statements of fact] but show, notwithstanding, that the plaintiff has no cause of action, must be *specially alleged*." (Emphasis added.) Indeed, "[t]he fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway." (Internal quotation marks omitted.) *Almada* v. *Wausau Business Ins. Co.*, 274 Conn. 449, 456, 876 A.2d 535 (2005). A general allegation in a special defense that a plaintiff failed to comply with HUD regulations, without more specificity, would not meet the requirement under § 10-50 that facts that show why the plaintiff has no cause of action must be "specially alleged" and would not serve to apprise the court and opposing counsel of the issues to be tried. See, e.g., *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, 330 Conn. 40, 72, 191 A.3d 147 (2018) ("Each of the special defenses states a summary legal conclusion, lacking any support-

defense, a borrower would have no reason to know whether a lender complied with specific HUD regulations.

ing facts or indication as to which counts they are directed. As such, they would not even meet our fact pleading requirements for special defenses as set forth in . . . § 10-50.''). As we have explained, a burden shifting procedure has been adopted by at least two jurisdictions in the context of foreclosures of FHA insured mortgages. See *Palma* v. *JPMorgan Chase Bank, National Assn.*, supra, 208 So. 3d 775; *Wells Fargo Bank, N.A.* v. *Awadallah*, supra, 41 N.E.3d 487. Under this burden shifting procedure, once a plaintiff lender generally pleads compliance with HUD regulations, a defendant borrower will have access to discovery to determine whether the plaintiff actually complied with the various regulations. Should the defendant discover a basis to allege that the plaintiff failed to comply with specific HUD regulations, the defendant would move to dismiss the action. We conclude that this procedure strikes the appropriate balance between the interests of the parties, and, therefore, we adopt the procedure in the present context. Accordingly, we reverse the holding of the Appellate Court that the burden was on the defendants to plead and prove that the plaintiff had not complied with HUD regulations before accelerating the debt and initiating foreclosure proceedings.

We turn finally to the defendants' claim that the Appellate Court incorrectly determined that, even if the burden was on the plaintiff to establish compliance with HUD regulations, because there was evidence in the record to support the conclusion that the plaintiff had complied, and no evidence to the contrary, the trial court's ruling that the plaintiff had satisfied its prima facie case was not clearly erroneous. See *Wells Fargo Bank, N.A.* v. *Lorson*, supra, 183 Conn. App. 217 n.10. The defendants contend that, because the trial court never considered this issue, the Appellate Court's conclusion that the plaintiff had met its burden of proof

462 FEBRUARY, 2022 341 Conn. 430

Wells Fargo Bank, N.A. *v.* Lorson

was speculative.[9] We agree with the defendants. Although the plaintiff presented testimony that it was in possession of documents showing that it had complied with HUD regulations, as well as evidence of actions that it took to comply with specific regulations, the defendants had no reason to present any evidence of noncompliance with specific regulations, or to rebut the plaintiff's evidence of compliance, because the trial court had denied their request to amend their answer to include the special defense of noncompliance. Similarly, the plaintiff was not on notice that it was required to present evidence of compliance with any specific HUD regulation. We conclude, therefore, that the case must be remanded to the trial court for a new trial limited to the issue of whether the plaintiff complied with the specific HUD regulations with which the defendants claim the plaintiff was noncompliant. The plaintiff need not establish that it has satisfied the other elements of its prima facie case, as the defendants make no other claim of error with respect to the trial court's finding on that issue. See, e.g., *Ostrowski* v. *Avery*, 243 Conn. 355, 368, 703 A.2d 117 (1997) (remanding matter to trial court for new trial limited to issue on which trial court misallocated burden of proof).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court for a new trial limited to the issue of whether the plaintiff complied with applicable HUD regulations before accelerating payment of the defendants' debt and initiating foreclosure proceedings.

In this opinion the other justices concurred.

[9] We have already rejected the plaintiff's contention that the defendants "waived" this issue when they failed to raise the special defense that the plaintiff had not complied with HUD regulations. See footnote 3 of this opinion.